Curtis Leon **RATLIFF**, Appellant,

v.

**Hubert Lee LINE, Appellee.**

Court of Appeals of Kentucky.

Feb. 27, 1970.

Huddleston & Van Zant, Harold K. Huddleston, Elizabethtown, for appellant.

Paul M. Lewis, Hatcher & Lewis, W. Burton Cowley, Elizabethtown, Lawrence S. Grauman, Louisville, for appellee.

CULLEN, Commissioner.

Hubert Lee Line recovered judgment against Curtis Leon Ratliff on a jury verdict in the amount of $72,000 as damages for alleged personal injuries sustained in a collision between an automobile driven by Line and a truck driven by Ratliff. Appealing from that judgment, Ratliff asserts several grounds of error, among which is the admission of prejudicial, irrelevant evidence. We are reversing the judgment on that ground.

The accident occurred before daylight on a foggy December morning on the Kentucky Turnpike, which is a four-lane highway with two northbound lanes and two southbound lanes, separated by a median. Ratliff was *going the wrong way*, heading south in the northbound lane nearest the median. The collision occurred when Line, who had been following another car in the outer northbound lane, entered the inner lane with the view of passing the other car.

The trial court directed a verdict of liability against Ratliff and submitted to the jury only the issue of damages. Line's major claim of damage was that he suffered constant severe pain in his head and neck, such as to cause him great suffering and to disable him from carrying on his occupation of a building contractor and building-material supplier. Line himself testified in detail as to his pain. His doctors testified that they were able to find little or no evidence of a cause for the pain, but they said they believed his complaints were real and he was not malingering. It appears that the doctors considered him to be afflicted by anxiety neurosis.

We have given the foregoing brief statement of the circumstances of the accident and the nature of Line's injuries in order that the question of admission of irrelevant evidence may be considered in proper perspective.

The first witness put on by the plaintiff was the mayor of Line's home city. He testified as to Line's church work. No objection was made by the defendant. The second witness was a high school principal who testified as to Line's work with the Little League and PTA. Again there was no objection. The third witness was the Secretary of the Brotherhood Department for the Kentucky Baptist Convention, who was asked concerning Line's work with the church brotherhood and youth groups. At this point the defendant's counsel became aware that the references made to church and youth work were not merely casual supplying of background material but were part of the trial plan to emphasize Line's good moral character. So defendant's counsel made strong objection to any further evidence of this kind, which objection was overruled. The plaintiff then put on the local city clerk, who formerly had been a high school principal, and who testified concerning Line's activities in school affairs and his membership on the city council. The next witness was the superintendent of the Glendale Children's Home. He testified to Line's work with youth and in the church. The defendant renewed his objection, but again was overruled. Line himself then took the stand, and in the course of his testimony he spoke of his work in the church, with youth groups, and in the PTA. Subsequently the plaintiff introduced one of Line's neighbors, who testified to Line's good works in the church. The defendant again objected and again was overruled. Next came the pastor of Line's church, who gave like evidence. The defendant's renewed objection was overruled. Finally came Line's wife, who repeated the same story of good works in church and school. This made a total of nine witnesses whose *primary* testimony (excepting Line himself) was of the church and school work. Finally, as a parting blow, the plaintiff's attorney in his closing argument made three references to Line's good works, mentioning the many

people who had told the jury what a fine man Line was, and stating that there were at least 20 more friends and neighbors who were ready to give the same evidence.

When the objections were made the only basis on which the plaintiff claimed the evidence was admissible was that it sustained Line's *credibility* against the defendant's efforts to show that he was malingering in his claims of pain. The plaintiff did not suggest that the evidence had any *substantive* relevancy. It is plain from the record that plaintiff's counsel was pursuing a definite trial plan of endeavoring to implant firmly in the juror's minds that Line was a man of high moral character who, as counsel said in his closing argument, is "the kind of man you can believe." A man who would not "come up here for a little bit of money and tell you something that's not so."

■ The trouble is that the plaintiff's plan violated the firmly established rule that in an action for personal injuries, evidence as to the plaintiff's good moral character is not admissible except in rebuttal to impeaching evidence. See Louisville & N. R. Co. v. Daniel, 122 Ky. 256, 91 S.W. 691, 3 L.R.A.,N.S. 1190; Hignite v. Nantz, 254 Ky. 214, 71 S.W.2d 442; 22 Am.Jur.2d, Damages, sec. 317, p. 418; 25A C.J.S. Damages § 148, p. 40. The evidence here all was introduced *in chief*. No effort ever was made by the defendant to *impeach* the plaintiff because the defendant did not put on any witnesses. It is true that in cross-examining Line and his doctors, the defendant delved into the validity of Line's claims of constant pain, but as we understand the rule, the *anticipation* that this would be done would not furnish a ground for antecedent proof by the plaintiff of his good moral character, and we are not at all sure that such proof would be admissible even subsequent to the cross-examination, in the guise of rebuttal.

■ The admission of the evidence in question clearly was erroneous. We believe the defendant's objections were timely and adequate. It is true that no objection was made to the testimony of the first two witnesses, but at that time the references to Line's good works had not achieved such proportions as to give indications of having prejudicial effect. The prejudice was calculated to come from the repeated emphasis, by witness after witness, and as soon as it became apparent that this was the plaintiff's plan of attack, the defendant made appropriate objections. The objections subsequently were renewed sufficiently to give the trial court ample opportunity to rectify the situation.

■ It is our opinion that the evidence must be considered to carry such probability of prejudice as to require reversal of the judgment. Since the plaintiff's claim of damages rested in substantial part on *subjective* symptoms alone—on Line's own statement of suffered pain—it was essential to his obtaining a substantial award of damages that the jury *believe* his testimony. The jury did believe it, and awarded him $72,000. On the admission of Line's counsel themselves, the only purpose in offering the evidence of Line's good works was to convince the jury that he was a man who could and should be *believed*. The evidence appears to have had that very effect, so it must be considered to have been prejudicial.

We are reversing the judgment for the error in the admission of the evidence hereinbefore discussed.

Other claims of error require only brief attention.

■ First, the appellant contends that there was a jury issue of Line's contributory negligence. This contention is based on Ratliff's testimony that as he was proceeding down the highway in the wrong direction he saw the *lights* of the oncoming cars (Line's and the one ahead of it) when they were at a distance of 600 to 800 feet from him. From this, he argues that Line should have seen his lights, and stayed in the outer lane instead of entering the inner

lane to pass. We are not so persuaded. Ratliff knew that he would encounter cars coming toward him, because he knew he was going the wrong way. When he saw lights he reasonably adjudged them to be car lights. His vision was not obstructed by any other vehicle. On the other hand, Line had no reason to anticipate that there would be a vehicle coming toward him. Even if he had seen lights up the road, in the fog, he reasonably would have thought they were markers of some kind rather than car lights. And his vision to the north was substantially impeded by the car in front of him until he turned out to pass. Even Ratliff admits that after Line entered the inner lane it was too late for either driver to avoid the collision. In our opinion reasonable minds could not find Line guilty of contributory negligence in these circumstances.

Second, the appellant complains of the fact that the plaintiff was permitted, during the trial, to amend his complaint to include a prayer for recovery of medical expenses, by dictating the amendment to the court reporter. The appellant argues that the amendment in that form did not constitute a *signed* written pleading within the requirements of CR 7.02, 10.01 and 11. We see no need to answer this contention, since its ground may be eliminated before another trial.

Third, the appellant maintains that there was no proof that the medical expenses were reasonable; that the proof of lost wages was not proper; that objections to certain testimony of a doctor improperly were overruled; and that plaintiff's counsel committed error, in his closing argument, in referring to two jurors by name. We pass these contentions also, because the things complained of may not occur upon another trial.

 Finally, it is argued that the damages are excessive. The plaintiff was 48 years of age. His business was that of a building contractor and building-material supplier. If he was to a great extent disabled from gainful activity, the damages awarded do not constitute excessive compensation. The real issue was whether he was in fact so disabled. We think the evidence fully warranted the finding that he was. The pain as testified to by Line was of disabling severity. The doctors testified that they believed that the pain was real and not feigned. The fact that the pain might be attributed to mental rather than physical sources is not significant, so long as the mental condition was caused by the accident as the evidence in this case would warrant being found. The pain would be just as disabling whether from a mental or a physical source. It is our opinion that the damages are not excessive.

 Since there was a clear-cut case of *liability* on Ratliff's part, there is no occasion for the issue of liability to be retried; we direct a new trial on the issue of damages only.

The judgment is reversed, with directions for further proceedings in conformity with this opinion.

All concur.