## Colker v. Connecticut Fire Insurance Company, et al. And three other cases.

(Decided June 5, 1928.)

### Appeals from Campbell Circuit Court.

1. Insurance.—Under Civil Code of Practice, sec. 526, defendants admitting loss and denying liability therefor in action on fire insurance policies, had burden of showing facts exempting them from liability.

2. Insurance.—In actions on fire insurance policies burden was on defendants to sustain allegations of their answers, controverted by reply, that insured building was used for manufacturing moon-

shine whisky with insured's knowledge and my means within his control.

3. Insurance.—Court having instructed jury, in actions on fire insurance polices, to find for plaintiff, unless moonshine still was installed or operated in insured building with knowledge, or by means wthin control, of insured, thereby increasing hazard, should also have given instructions as to what would be means within plaintiff's control under the evidence.

4. Insurance.—As operaton of moonshine still in insured building increased fire hazard and no regular insurance company would take such a risk, words of instruction, in actions on fire policies. "Which increased the hazard to the property by fire, if you find the hazard was so increased," should be omitted on another trial.

5. Trial.—In actions on fire insurance policies, argument of defendants' counsel, that "It's a dirty nasty Jewish trick that this criminal, convicted in the United States court, did; a criminal who tried to cheat the government, and now trying to cheat the fire insurance companies by a dirty Jew trick"—held improper as appealing to race prejudice.

6. Trial.—Motion to discharge jury, immediately after argument, appealing to race prejudice, sufficiently raised such question, though there was no exception to such argument at the time.

7. Trial.—In actions on fire insurance policies, argument of defendants' counsel that plaintiff's "business was so bad he gets up some scheme to make some money" and that he had no right to rent out insured building wherein moonshine still was installed and operated, held improper; there being no evidence that plaintiff's business was in bad condition, and he having right to rent out part of premises.

8. Witnesses.—In actions on fire insurance policies, plaintiff's testimony on cross-examination that he paid fine in federal court for shipping whisky in box of chewing gum, but took responsibility for his minor son, who put in whisky without his knowledge, and evidence of his statements to federal officers after issuance of warrant against him for manufacturing whisky were competent only on question of his credibility in denying that his chewing gum factory or anything under his control was used in whisky business, and jury should have been so instructed.

9. Trial.—In actions on fire insurance policies, it was improper for defendants' attorney to argue that plaintiff should not recover because he had been found guilty in federal court of operating a still in insured building; what was done in such case being competent only in so far as affecting plaintiff's credibility as witness.

10. Trial.—In actions on fire insurance policies, court erred in allowing defendants' counsel to argue to jury that plaintiff could have offered evidence of his good character, and by failing to do so prevented defendants from introducing proof of his bad character.

11. Evidence.—The general rule is that evidence of general good character is inadmissible in a civil action in which a party is charged by inference with wrongdoing.

12. Evidence.—Under Civil Code of Practice, sec. 599, plaintiff in actions on fire insurance policies could not introduce evidence of his good character for truthfulness or morality until his general reputation therefor had been impeached; such section applying to all witnesses.

HOWARD M. BENTON and CHAS E. LESTER for appellant.

HORACE W. ROOT for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The above four cases will be heard together as they were in the circuit court. On the former appeal, this court held that the circuit court erred in sustaining a demurrer to the plaintiff's reply. See Colker v. Connecticut Fire Ins. Co., 218 Ky. 124, 290 S. W. 1073. On the return of the case to the circuit court the rejoinder was filed, also the surrejoinder. The cases came on for trial before a jury who returned a verdict for the defendants. The plaintiff appeals.

It is earnestly insisted for the plaintiff that the court erred under the pleadings in adjudging the burden of proof to be on the defendants in instructing the jury and in allowing improper argument to the jury. This requires a full statement of the pleadings. By his petition the plaintiff alleged that on October 1, 1924, he was the owner of a brick and frame building occupied as a chewing gum factory; that the defendants issued to him policies insuring the building; that it was totally destroyed by fire on July 19, 1925 and was of value $80,000; and that the defendants refused to pay and denied all liabilities on the policies. By amended petition the plaintiff pleaded that he had exclusive use, occupation, and possession of the property up until the time of the fire, except a garage located east of the factory building and the sheet and metal building located south of the factory building, which was rented to his tenant, James Martin, for storage purposes during the latter part of May, 1925, and was occupied by Martin from about the 1st of June, 1925, until the fire occurred; that plaintiff occupied this building for storage purposes up to the latter part of May, 1925, and in renting same to Martin for storage purposes the change of occupants was made without increase of hazard.

By the answer the defendants denied that plaintiff rented the sheet and metal building to James Martin, or that Martin from about the 1st of June, or at all, occupied the building, or that the plaintiff had occupied the building for storage purposes until the latter part of May, or that in the alleged renting of the building to Martin the change of occupants was made without increase of hazard. The answer then alleged that the property insured under the policy embraced and included the sheet and metal building which was attached to and was a part of the factory building and was so insured solely as a chewing gum factory to be used and to be occupied as such and that it was so used and occupied at the time of the issual of the policies; that the policies provided that they should be void if the hazard was increased by any means within the control or knowledge of the insured, or if any change took place in the title or possession of the property, except change of occupants without increase of hazard, or if the business conducted therein was in violation of the law; that at the time of the fire and without its knowledge or consent the plaintiff caused, suffered, and permitted a large copper moonshine still, of about 100-gallon capacity, to be installed, used, and operated in said sheet and metal building for the purpose of manufacturing moonshine whisky, and large quantities of whisky mash, about 50 barrels thereof, to be made, deposited, and kept in said building, or that if the plaintiff did not do this himself his alleged tenant, James Martin, so caused, suffered, and permitted the still to be so installed, used, and operated and said mash to be made and kept in the building at the time of and long prior to the fire, all of which was in violation of law; that the still so installed and the mash so deposited in the building increased the hazard to the insured property by fire, and that such increase of hazard to the property by fire was by means within the control and knowledge of the plaintiff and in violation of the terms of the policies; that plaintiff in so renting the building to Martin, if he did rent it, caused a change of occupants to take place in the possession of the insured property with increase of hazard to same by fire in violation of the prohibition law and not incidental to the chewing gum business; and that the property would not have been insured if such illegal use of it had been known when the policies were issued. The plaintiff by his reply denied the allegations of the answer that the property insured under the policies in-

cluded the sheet and metal building, or that it was attached to or formed a part of the factory building. He alleged that for many months previous to May, 1925, he used the sheet and metal building as a storage room in connection with his chewing gum manufacturing business conducted in his factory building, as designated in the policies, and during the month of May, 1925, he removed his stored goods therefrom and cut off entrance connections between this building and the factory building so that the two buildings were disconnected with a space of about 5 feet intervening between them and rented the sheet and metal building to his tenant, James Martin, who used it for storage purposes and remained in possession until the time of the fire; that the buildings remained so disconnected during the tenancy of James Martin; and that the sheet and metal building was not a part of the chewing gum factory during the tenancy period or at the time of the fire. He then denied the allegations of the answer as to the still or mash or the use of the building for this purpose, or that any provision of the policy had been violated. He denied that he suffered or permitted the still to be installed in the building or the whisky mash to be deposited there or that James Martin so did, and alleged that:

> "If said acts were committed by said tenant or any one else, said acts were committed without knowledge of plaintiff and by means not within plaintiff's control."

By the rejoinder the defendants denied that at any time the plaintiff removed his goods from the shed or at any time cut off entrance connections between the chewing gum factory and the sheet and metal building, and alleged that this building was a part of the chewing gum factory building and was a subject of loss under the policy; that at the time of the fire and a long time previous thereto the moonshine still was used and operated in this building for the purpose of manufacturing moonshine whisky and mash was kept in the building, all of which was an increase of hazard to the insured property by fire and by means within the control or knowledge of the insured and in violation of the provisions of the policy. By the rejoinder the defendants also pleaded that the sheet and metal building, during the tenancy and at the time of the fire, was the subject of loss thereto by

fire under the policies. The court on the motion of plaintiff struck out the allegation. By surrejoinder plaintiff denied that the still or the mash or the making of moonshine in the building was an increase of hazard to the property by fire by means within the control or knowledge of the insured or thereby avoided the policy.

The clauses of the policy relied on to defeat the action are set out in the former opinion. It was there held that the clause providing against a change of possession with increase of hazard referred only to an increase of hazard when the change of possession takes place and does not include an increase of hazard by the subsequent acts of the tenant without the knowledge or consent of the insured. It was also held that the clause avoiding the policy if business was conducted in it in violation of law did not apply if this was done by the tenant without the knowledge or consent of the assured.

1. *As to burden of proof*: Section 526 of the Civil Code provides:

"The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side."

It was admitted in the pleadings that the defendants had insured the property and that the loss had occurred. The defendants had denied liability, and, as they admitted the loss, the burden was on them to show facts exempting them from liability. This they did by alleging that the sheet and metal building was used for manufacturing moonshine whisky, increasing the risk under the policies, and that by the terms of the policy they were thus released from liability. They denied that the plaintiff had leased this building to James Martin at all or that he occupied it, and alleged that the property insured under the policies included this building, which was used as a part of the chewing gum factory when the policies were issued, and alleged that the increased hazard by reason of the moonshine manufacture was by means within the control or knowledge of the insured. The plaintiff by his reply alleged that the sheet and metal building had been disconnected from the factory building and was not a part of the chewing gum factory. He denied the allegations of the answer as to the still or mash or the use of the building for the manufacture of moonshine, or that any provision of the policy had

been violated, or that he had suffered or permitted this to be done. He then alleged that, if these things were done, they were done by his tenant, James Martin, without his knowledge and by means not within his control. By the rejoinder the defendants alleged that the moonshine business was operated in the building by means within the control or knowledge of the insured. It will thus be seen that two issues were made: (a) Had the moonshine business been carried on in the building? (b) Was it carried on by the plaintiff, or, if carried on by his tenant, James Martin, was it with his knowledge or by means within his control?

Under the opinion of the court on the former appeal, the reply was held sufficient on demurrer. The burden was therefore upon the defendants to sustain the allegations of the answer controverted by the reply, and if it turned out that Martin, the tenant, had installed the moonshine business, then the burden was upon it to show that this was with the knowledge or by means within the control of the insured. If no proof had been offered, judgment would have gone for the plaintiff. For every substantial allegation in the answer on this question was denied by the reply, and the affirmative matter in reply was only in the nature of an affirmative denial of the facts stated in the answer. This is not the case of a suit on a note and a plea of no consideration and a reply of special consideration. This is a case where facts in avoidance were pleaded in the answer and denied by the reply. The court therefore properly held the burden to be upon the defendants.

2. *As to the instructions*: The court gave the jury these instructions:

> 1. The court instructs the jury that they should find for the plaintiff. (Here follow amounts as set out in pleadings.) Unless you believe from the evidence that the moonshine still was located and operated in the sheet and metal building as described in the proof and was installed or operated there at the time of or previous to the fire, with the knowledge or by means within the control of plaintiff, which increased the hazard to the property by fire, if you find the hazard was so increased, then the law is for the defendants."

The court gave no instructions defining what would be "means within the control of plaintiff," and, though

the instructions asked by the plaintiff were properly refused, the court should have told the jury what, under the evidence, would be means within his control and should have given the jury the following additional instructions:

> "If the plaintiff had, in good faith, rented to James Martin the sheet and metal building and Martin had installed and operated the moonshine still therein, without the plaintiff's consent, and plaintiff did not know it and in the exercise of ordinary care, under the facts known to him, should not have known it, then same was not by means within his control. But if the plaintiff had not, in good faith, rented the building to James Martin, or if Martin installed and operated the moonshine still in it with plaintiff's consent, or he knew it or in the exercise of ordinary care under the facts known to him should have known it, then same was by means within plaintiff's control."

The operation of the moonshine still increased the hazard to the property. No regular insurance company would take such a risk, and on another trial the court will omit from instruction 1 these words:

> "Which increased the hazard to the property by fire, if you find the hazard was so increased."

3. *As to the argument to the jury*: Mr. Benton and Mr. Lester represented the plaintiff. In his final argument to the jury Mr. Root, defendants' counsel, over the objection and exception of plaintiff, was allowed to say as follows:

> "That Mr. Benton would not dare to introduce witnesses to testify to the reputation of Mr. Colker, because I (Mr. Root) would have known—I want to say to you that Colker was charged in this case with either operating that still himself or of having knowledge that the still was there, and, under a charge like that, he had a right to introduce witnesses here to show his general reputation for veracity and morals, and no witness was introduced. Don't you think that when he was cited to the United States court, he saw Mr. Benton and that he took advice from an able and shrewd lawyer like Mr. Benton, and Mr. Benton said, 'The best thing for you

to do, the only thing you can do, is to have a warrant sworn out on James Martin'—don't you think that is what was done? Don't you think that Mr. Benton would say to him, 'Now, the best way for you to do to get out of this thing is to go over there and camouflage or subterfuge and ask for the arrest of some fellow named James Martin.' He didn't think of that though when he was cited there and appeared before the United States Commissioner Roetken, who asked him to give a description of the man, and he could not do it. That if he (Colker) did anything to increase the risk or hazard, he violated his right to recovery under the policy.

"When I asked Mr. Colker the condition of his business at that time, he stated it was good, and he knows it was bad; his business was so bad he gets up some scheme to make some money. The evidence shows conclusively, this still, this fire, that Abe Colker planned the whole thing—"

At this point the court told Mr. Lester, who had objected, to sit down, and Mr. Root proceeded as follows:

"He planned the whole thing. It's a dirty, nasty Jewish trick that this criminal, convicted in the United States court, did; a criminal who tried to cheat the government, and now trying to cheat the fire insurance companies by a dirty Jew trick. The evidence shows beyond a doubt that Martin was only a subterfuge, and that there never was any Martin. Just a Jew trick of Colker and his lawyer to cheat the government and the insurance companies. Now, I want to ask this question: If the evidence was strong enough to convict Colker in the federal court—and the records show that he was convicted—it's more than enough to prove he tried to cheat the fire insurance companies. There's the lawyer on the other side (indicating Mr. Lester); he don't object or contradict that statement. He can't."

At this point Mr. Benton re-entered the room, and Mr. Root, over his objection and exception and after his motion to discharge the jury was overruled, added:

"That Mr. Colker had no right to rent that out —If the evidence in that case was sufficient to convict him criminally in that case—I think the testi-

mony in this case is sufficient to convict this man of operating a still. He tried to cheat the United States government, and he is now trying to cheat the insurance company.''

It was very improper for counsel in his concluding argument to appeal to race prejudice, and while there was no exception to this at the time, counsel did immediately move to discharge the jury, which sufficiently raised the question. The case should have been argued simply on the evidence before the jury. There was no evidence that Colker's business was in a bad condition. He did have a right to rent out part of the premises.

Colker stated on cross-examination that in 1920 he paid a fine in the United States court for shipping whisky in a box of chewing gum, but he said that his son had put the whisky in the chewing gum without his knowledge, and that he took the responsibility for his son as he was not of age. This evidence was properly admitted, but should only have been considered by the jury on the question of his credibility in denying that the chewing gum factory, or anything under his control, was used in the whisky business. The jury should have been so told.

It also appeared that after the fire a warrant was issued against him in the United States court for manufacturing whisky. What he said to the United States officers, in so far as it went to his credibility, was properly admitted; but all that occurred about this warrant was only competent upon the question of his credibility as a witness, and the court should have so told the jury. It was improper for the attorney in his final argument to argue that as he had been found guilty in the federal court he should have no recovery in these actions. What was done in that case is only competent in so far as it may affect the credibility of Colker as a witness in this case. No proof should be allowed as to what was decided in the federal court, for the parties to that proceeding and this action are not the same. If Colker said or did anything there inconsistent with his testimony here, this may be proved to contradict him. The objections of the plaintiff to the statements made by the attorney beyond this in the final argument should have been sustained. The fact that he had been convicted in the federal court can no more be used against him than his acquittal there could be used in his favor here. The case must be tried by the jury on the proof heard by them, uninfluenced by

the conclusion reached by the jury in the federal court on the evidence before them.

The court erred in allowing counsel to argue to the jury, in substance, that Colker could have offered evidence of his good character, and that by his failing to do so he had prevented the defendants from introducing proof of his bad character. While there is authority for the contrary, the general rule is that evidence of general good character is inadmissible in a civil action in which a party is charged by inference with wrongdoing. 10 R. C. L. 950, sec. 119. In Morris v. Hazelwood, 1 Bush, · (Ky.) 208, the defendant claimed, when sued for money intrusted to him, that he had been robbed of the money and introduced proof of former good character for the purpose of sustaining his defense. This was held error on the ground that the pleadings put in issue a fact, not character. In Evans v. Evans, 93 Ky. 518, 20 S. W. 607, the rule was thus stated:

> "In civil actions evidence of general reputation is not admissible unless the proceeding be such as to put the character of the party directly in issue."

In Mattingly v. Shortell, 120 Ky. 52, 85 S. W. 215, 8 Ann. Cas. 1134, the plaintiff, as a bookkeeper, had made entries in the books which his employer said were false. It was held that evidence of the bookkeeper's good character was inadmissible. In L. & N. R. R. v. Owens, 164 Ky. 557, 175 S. W. 1039, it was held that in malicious prosecution or slander the character of the plaintiff is directly put in issue and may be shown, but this rule has not been applied except in such cases where character is directly in issue. In Sipple v. Kehr, 176 Ky. 698, 197 S. W. 391, it was held in an action for assault and battery that the defendant could show the bad character of the plaintiff for peaceableness to sustain his charge that he had reasonable grounds to believe himself in danger, but that it was incompetent for the defendant to show that he was a man of good character for peacefulness unless his reputation was first attacked. Section 599 of the Civil Code provides:

> "Evidence of the good character of a witness is inadmissible until his general reputation has been impeached."

Colker was a witness in the case. He could not introduce evidence of his good character for truthfulness

or morality, under the Code, until his general reputation therefor had been impeached. The provision of the Code applies to all witnesses.

The court finds no other substantial error in the record, but for the errors indicated, which were substantial the judgment is reversed and cause remanded for a new trial.

Judgment reversed.