ADA A. ATCHISON, Appellant, v. JOHN MELVIN WEAKLEY, CLAUDE E. CUMMINGS and BEN A. ATCHISON, Executors of the Estate and Will of John R. Weakley, and CLAUDE E. CUMMINGS, Administrator *Pendente Lite* of the Estate of John R. Weakley.—148 S. W. (2d) 745.

Division One, March 13, 1941.

*Mayer, Conkling & Sprague* for appellant.

*Pross T. Cross, R. H. Musser* and *Gerald Cross* for respondents.

GANTT, P. J.—Action in two counts against the estate of J. R. Weakley on two promissory notes payable to plaintiff and alleged to have been executed by Weakley. The judgment on the first count is not for review on this appeal. The second count is for $20,000 on a note. Verdict for the defendants on this count. Judgment was accordingly entered. In due course plaintiff appealed.

The petition is conventional. In substance the answer follows: (1) general denial; (2) forgery; (3) no consideration; (4) mental incapacity; (5) undue influence and duress; (6) signature procured by trickery; (7) agreement that the note was not to be paid until after Weakley's death. The reply was a general denial.

The court instructed the jury that there was no evidence tending to show that Weakley, at the time of the transactions under consideration, was of unsound mind. It also instructed the jury that there was no evidence tending to show that the note was the result of undue influence and duress.

The facts material to a consideration of plaintiff's assignments of error may be stated as follows: At the age of seventy-nine and after an illness of only a few days, Weakley died January 20, 1937, at the

home of plaintiff, where he had resided for four years. He was a widower and left only collateral heirs. Plaintiff was a niece of Weakley's wife.

There was evidence tending to show that on December 6, 1933, Weakley gave bonds to plaintiff of the value of $14,000. On December 16, 1933, he also gave bonds to her of the value of $5,000. Plaintiff's husband placed the bonds in his safety deposit box in the First National Bank of St. Joseph. At that time Weakley owned several farms. He owed a balance of $16,000 on a farm. On January 1, 1934, he was informed that he would be charged a commission to renew the loan. Thereafter he stated to plaintiff that he did not want to pay five per cent commission for a renewal of the loan; that he had been doing business with the broker for many years and that it was not just to charge him for the renewal. He also stated that, if legal, he would buy the bonds from plaintiff, sell them and use the money to pay the loan on said farm. He also stated that he would give plaintiff his note for $20,000 in payment for the bonds. After Weakley and plaintiff obtained legal advice, plaintiff sold the bonds to Weakley for $20,000. The bonds were delivered to Weakley, who delivered to plaintiff the $20,000 note dated March 1, 1934. Weakley sold the bonds and from the proceeds paid the indebtedness on the farm.

On October 15, 1934, a cataract was removed from Weakley's right eye. A cystoid tumor followed, which was removed on January 3, 1935. After the operations Weakley had normal vision in his left eye by using glasses. Even so, he frequently had others to write checks and other documents which he signed. He was a successful business man and left quite an estate.

The case was submitted to the jury on the issues of forgery, consideration, trickery in obtaining signature to the note, and failure of plaintiff to prove a gift of the bonds in December, 1933. Plaintiff assigns error on an instruction directing the jury that if Weakley did not knowingly sign and execute the note, the verdict should be for the defendants. In other words, if Weakley's signature was procured by trickery, the verdict should be for the defendants.

There was no direct evidence on the question of trickery. Even so, defendants direct attention to evidence tending to show that Weakley, at the time of the alleged gift of the bonds to plaintiff, owed a mortgaged debt of $16,000 on a farm with interest at only five per cent, whereas, interest on the note in question was eight per cent. They also direct attention to evidence tending to show that a gift of $20,000 to plaintiff would disarrange the plan of distribution of Weakley's property under the will. They also direct attention to evidence tending to show that plaintiff and her husband did not call a disinterested person to witness the signature to the note. They also direct attention to evidence tending to show that Weakley had been having trouble with his eyes.

■ Defendants think that an inference of trickery would be authorized from the above stated evidence. We do not think so. The above stated facts and circumstances are not substantial evidence tending to show trickery in connection with the execution of the note. On the record a finding of trickery would be based on guess and conjecture.

Defendants cite Bogie v. Nolan, 96 Mo. 85, 9 S. W. 14, and Wissman v. Pearline, 135 S. W. (2d) 1. In the Bogie case there was evidence of undue influence. The action in the Wissman case was not on a written agreement. It was an action on the assumption of a mortgage debt as stated in a warranty deed delivered to defendants. There was direct evidence tending to show that defendants had no knowledge that the warranty deed contained a provision that they agreed to pay the mortgage debt. The cases are without application, and the instruction was erroneous and prejudicial.

■ Plaintiff also assigns error on the last paragraph of an instruction as follows:

"The jury are instructed that even though you may find from the evidence that John R. Weakley signed and executed the $20,000 note sued on in the second count of plaintiff's petition, yet, if you further find that there was no consideration therefor, and that the said John R. Weakley received no . . . bonds . . . therefor, then under the law, said note is null and void, . . .

'"And in this connection, you are further instructed that, love and affection, and fondness and esteem, only, do not constitute a legal and sufficient consideration for said note.'

Of course, the members of the jury would think that the last paragraph in this instruction had reference to some phase of the evidence. They may have believed that Weakley gave the bonds to plaintiff and that he gave the note to plaintiff for a return of the bonds. Even so, they may have concluded under said paragraph of the instruction that the consideration for the note was only love and affection for the reason the bonds were a gift. The instruction was erroneous and prejudicial.

Furthermore, the trial court over-instructed on the credibility of the witnesses. On a retrial of the case it is likely that other assignments of error will disappear. The judgment is reversed and the cause remanded. It is so ordered. All concur.