ADA R. ATCHISON, Respondent, v. JOHN MELVIN WEAKLEY and BEN A. ATCHISON, Executors of the Estate and Will of JOHN R. WEAKLEY, Deceased, and JEWELL CUMMINGS, Administrator *pendente lite* of the Estate of JOHN R. WEAKLEY, Deceased, Appellants. —No. 38262.—169 S. W. (2d) 914.

Division One, March 2, 1943.

Rehearing Denied, April 6, 1943.

*Cross & Cross, C. B. DuBois* and *Walter A. Raymond* for appellants.

1094

*J. Dorr Ewing, Stephen K. Owen* and *Chas. H. Mayer* for respondent.

BRADLEY, C.—This cause was commenced on August 20, 1937, and the petition is in two counts, each upon a separate promissory note. The first count was to recover on a note for $1050 dated June 13, 1936, and the second was to recover on a note for $20,000 dated March 1, 1934. The cause, on the second count, has been tried twice and appealed twice. At the first trial plaintiff recovered on the first count, but lost on the second. Plaintiff appealed from the judgment against her on the second count, and the judgment was reversed and the cause remanded. Atchison v. Weakley et al., 347 Mo. 743, 148 S. W. (2d) 745. Defendants did not appeal from the judgment in favor of plaintiff on the first count, and that count is not here involved.

At the second trial on the second count the verdict and judgment went for plaintiff for the face of the $20,000 note, plus interest in the sum of $12,303, making a total of $32,303, and defendants appealed.

Plaintiff says that the notes were executed by J. R. Weakley, deceased. The evidence at the second trial was substantially as it was in the first. The facts necessary to understand the case are succinctly stated in the prior opinion and we adopt them here:

"At the age of seventy-nine and after an illness of only a few days, Weakley died January 20, 1937, at the home of plaintiff, where he had resided for four years. He was a widower and left only collateral heirs. Plaintiff was a niece of Weakley's wife.

"There was evidence tending to show that on Dec. 6, 1933, Weakley gave bonds to plaintiff of the value of $14,000. On Dec. 16, 1933, he also gave bonds to her of the value of $5,000. Plaintiff's husband placed the bonds in his safety deposit box in the First National Bank of St. Joseph. At the time Weakley owned several farms. He owed a balance of $16,000 on a farm (loan). On Jan. 1, 1934, he was informed that he would be charged a commission to renew the loan. Thereafter, he stated to plaintiff that he did not want to pay five per cent commission for a renewal of the loan; that he had been doing business with the broker for many years and that it was not just to charge him for the renewal. He also stated that, if legal, he would buy the bonds from plaintiff, sell them and use the money to pay the loan on said farm. He also stated that he would give plaintiff his note for $20,000 in payment for the bonds. After Weakley and plaintiff obtained legal advice, plaintiff sold the bonds to Weakley for $20,000. The bonds were delivered to Weakley, who delivered to plaintiff the $20,000 note dated March 1, 1934. Weakley sold the bonds and from the proceeds paid the indebtedness on the farm."

Error is assigned (1) on alleged improper argument of counsel; (2) on plaintiff's instructions 3 and 5; (3) on the refusal of defendants' instructions 4, 5 and 7; and (4) on the alleged hostile attitude of the court "towards defendants and their counsel."

 Mr. Ewing opened the argument for plaintiff, and his argument appears in the record. At the outset of his argument Mr. Ewing said that "they (defendants) come in and say he (deceased) didn't know what he was signing." Immediately following this statement the record shows: "Then, you are to decide this case without the benefit of hearing the defendant or plaintiff testify in the case; since this was a transaction between a person now deceased and a living person—Mr. DuBois (interrupting): We object to any argument on that. The Court: I will permit him to say—objection overruled. Mr. DuBois: We object and ask that the jury be discharged. He has no right to argue that the woman has not a right to testify (exception). Mr. Ewing (continuing): You have seen this woman during the last three days; not only a chance to observe her, but I think a chance to find out what people in that community really think about her and the executor saw fit to attend court for the first two days of the trial, but when it came to going on the witness stand, for some reason he didn't show up. I think a pretty good reason why he didn't want to go on the witness stand is he would have had to explain a lot of things on cross-examination as to what is going on in this estate. Pross T. Cross: We want to make a little record. We want to object and move the court to instruct the jury to disregard that statement. The Court: What somebody might have said and didn't say—let's don't do that. Mr. Ewing: Do I understand that

their failure to call him, they may draw that inference? The Court: All right. Mr. Ewing (continuing) : I think I have a right to draw the inference that if that man had taken that stand—Pross T. Cross (interrupting) : We want to object. They did not subpoena this administrator here and we object to that and move the court to instruct the jury to disregard that statement and reprimand Mr. Ewing for making statements of that kind. The Court: Motion to curtail the argument overruled—proceed (exception)."

Plaintiff says that the motion for a new trial did not call to the attention of the trial court the argument on the failure of the executor to testify. On the subject of argument the motion alleges only as follows:

"In overruling defendants' objections to argument of one of the attorneys for plaintiff to the jury, J. Dorr Ewing, in arguing to the jury that plaintiff, on account of the death of John R. Weakley, could not testify in the case, and that plaintiff would have more evidence in the case if plaintiff could testify and was handicapped in the case and could not present her case to the jury except under such handicap because plaintiff could not testify and was not a competent witness under the law.

"In not declaring a mistrial and discharging the jury at the request of defendants by reason of said objectionable argument by J. Dorr Ewing to the jury arguing and stating that plaintiff was handicapped and could not present her case to the jury more completely because plaintiff could not testify under the law."

Absent assignment in the motion for a new trial as to the argument on the failure of the executor to testify, that complaint is not for review. Beebe v. Kansas City, 327 Mo. 67, 34 S. W. (2d) 57, l. c. 58; Arnold v. May Dept. Stores, 337 Mo. 727, 85 S. W. (2d) 748, l. c. 756.

Plaintiff also says that defendants did not "as a matter of fact", in the motion for a new trial, call to the attention of the trial court what counsel said as to the jury deciding the case "without the benefit of hearing the defendant or plaintiff testify in the case; since this was a transaction between a person now deceased and a living person." But assuming, without deciding, that the motion for a new trial was sufficient on this point, still the question remains: Was such prejudicial? The alleged maker of the note, J. R. Weakley, deceased, of course, was not a defendant. By the language "since this was a transaction", etc., the inference might be that counsel was going to tell the jury, as he understood it, why plaintiff had not testified, but whatever he had in mind was not completely expressed. After the objection counsel abandoned the subject, and never returned to it. Certainly defendants were not prejudiced by what counsel said.

■ As appears, error is assigned on plaintiff's instructions 3 and 5. Defendants, in the answer, alleged undue influence by plaintiff's husband, Ben A. Atchison, upon J. R. Weakley. Instruction No. 3 told the jury that there was no evidence of such influence. Defendants, in the brief, "concede that the issue of undue influence should not have been submitted to the jury." Giving withdrawal instructions is a matter for the sound discretion of the court, and unless such discretion is abused, there is no ground to complain, and we do not think that giving the instruction confused the jury or that discretion was abused. Kick v. Franklin et al., 345 Mo. 752, 137 S. W. (2d) 512, l. c. 516; Yuronis v. Wells, 322 Mo. 1039, 17 S. W. (2d) 518, l. c. 521; Felber v. Union Electric Light & Power Co. et al., 340 Mo. 201, 100 S. W. (2d) 494, l. c. 498; Wright v. Quattrochi et al., 330 Mo. 173, 49 S. W. (2d) 3, l. c. 7.

■ Instruction No. 5 follows: "The court instructs the jury that if you find and believe from the evidence that during the month of December, 1933, John R. Weakley, now deceased, delivered to the plaintiff United States bonds having a face value of $19,000, and that he intended by said act, if you so find, to then and thereby vest absolute control and ownership of said bonds in the plaintiff, and that the plaintiff then accepted said bonds, and that thereafter, on or about the 1st day of March, 1934, the plaintiff, at the request of the said John R. Weakley, returned said bonds to the said John R. Weakley, and that said bonds were on said date of the value of more than $20,000, and that, in exchange for said bonds, if you so find, the said John R. Weakley, under the name of J. R. Weakley, executed and delivered to the plaintiff his promissory note for $20,000, introduced in evidence as plaintiff's exhibit No. 2, then, regardless of every other fact and circumstance in this case, your verdict should be for the plaintiff. . . . "

The bonds which plaintiff claims that John R. Weakley gave to her were United States registered bonds, and defendants contend that "these registered bonds were not the subject of a gift in any event, but that the evidence in this case wholly fails to show such a transfer by proper assignment as would be effective in any event."

In Gosney v. Costigan et al., 326 Mo. 1215, 33 S. W. (2d) 947, an alleged gift of United States registered bonds was involved and on the question of donee's title, absent endorsement by the donor, the court said [33 S. W. (2d) l. c. 954]: "The fact that the United States Treasury Department might have refused to transfer the bonds to Costigan individually does not tend to prove that Costigan did not accept the gift. If the title actually passed to Costigan by a timely acceptance of the gift, the matter of securing transfer on the records of the government was entirely between Costigan and the government." We think that the ruling in the Gosney case rules

the question here. See also In re Diskin's Estate, 161 Atl. 893; Underwood v. Underwood, 43 Ga. App. 643, 159 S. E. 725.

On the question of the validity of the gift of the registered bonds, absent the endorsement of donor, Weakley, defendants cite Grosfield v. First National Bank, 73 Mont. 219, 236 Pac. 250; Decker v. Fowler, 199 Wash. 549, 92 Pac. (2d) 254; Patterson v. Citizens National Bank, 143 Kan. 376, 55 Pac. (2d) 352; In re Owens' Estate, 32 N. Y. S. (2d) 747.

In the Grosfield case the bonds involved were stolen; in the Decker case the bonds were not transferable; in the Patterson case the bonds were state soldiers' bonus bonds of Kansas, embezzled by the guardian of minors. In the Owens' Estate case, the bonds concerned were Baby Bonds, authorized by the second liberty bond act, 1917, 31 U. S. C. A., Sec. 752 et seq. Voluntary transfer was prohibited.

The further contention is made that plaintiff's instruction No. 5 is bad because it ignores a letter of explanation typed by plaintiff's husband and signed by Weakley December 30, 1936, approximately 2 years and 10 months after the execution of the $20,000 note on March 1, 1934. Before Weakley sold the bonds and paid off the mortgage on his farm he, in company with plaintiff's husband, went to see Judge R. E. Culver, a prominent lawyer of St. Joseph, Missouri, to ascertain, according to Judge Culver's evidence, if he (Weakley) could legally take the bonds back and give plaintiff his note. Judge Culver testified that on that occasion Weakley told him that he had given and delivered the bonds to plaintiff, and explained why he wanted to take them back and give his note. Judge Culver advised that such could be done, but suggested that if the bonds were taken back "there would be no evidence probably he had ever given them to her (plaintiff) because she could not testify in case of his death and probably there should be something in writing, and sitting there at my desk I scribbled off something. As near as I recall it was that he had given her these bonds and wanted to get the bonds (back) to pay indebtedness and repay her by giving her a note and interest. I do recall something about some notes. It seemed he borrowed from her a little money from time to time. . . . I think this statement went on to say he wanted to get back these bonds for use in paying off indebtedness he owed; that he would give her a note, possibly payable in a year. I would not be certain as to that—to repay her the amount. $20,000.00 is my recollection of the amount and the note was to bear interest. I am not sure whether I put that in or not. I don't recall what the agreement was as to interest and he was to pay her back with interest and something about these other notes."

What Judge Culver prepared, according to the evidence of plaintiff's husband, was in form, a letter by Weakley to plaintiff. Mr. Atchison (plaintiff's husband) testified that when he and Mr. Weak-

ley returned home from St. Joseph, on the day Judge Culver advised them, and on the day the bonds were sold, he copied what Judge Culver had prepared and that Weakley, on that night, executed and delivered the $20,000 note and signed and delivered to plaintiff the letter copied by him from what Judge Culver had written. At the time of the execution of the $20,000 note plaintiff held 2 or 3 other small notes of Weakley's, which were given to her for money loaned. On June 13, 1936, the amount then due on the small notes was $1050, and on that date Weakley took up the small notes and gave plaintiff the $1050 note which is the note sued on in the first count of the petition, but not here involved, as stated. According to plaintiff's husband, at the time of the execution of the $1050 note, Weakley said: "I must write another letter because conditions have changed; instead of having $20,000, and two or three little notes, you only have two." What may be termed the first letter of explanation was returned to Weakley when the $1050 note was executed, but he did not write another letter until December 30, 1936, some six months after the execution of the $1050 note. What may be termed the second letter of explanation follows:

"Gower, Missouri
"December 30, 1936.

"Mrs. Ada Atchison
"Gower, Missouri
"My dear niece:

"On the advice of my attorney and in order that you may fully understand what provision I have made for you, I am explaining it in writing.

"*The note I gave you (20,000.00) twenty thousand dollars in March 1, 1934, was all a gift* (italics ours). You also have my note for (1050.00) one thousand and fifty dollars which you loaned me dated June 13, 1936. In addition to this I have left you (1000.00) one thousand dollars in my will. I will continue to pay you interest on the one thousand and fifty dollar note while I live.

"At my death you will collect from my estate the (20,000.00) twenty thousand dollar note and the one thousand and fifty dollar note with interest then due, and the one thousand also left you by my will.

"J. R. Weakley."

Plaintiff's husband testified that Weakley dictated the letter to him and that he "copied on the typewriter and he (Weakley) signed it." Judge Culver was asked about the italicized part of the letter, and said: "I don't believe I wrote it that way."

As supporting the complaint that instruction 5 ignored the letter of explanation, defendants cite Simpson v. Van Laningham, 267 Mo. 286, 183 S. W. 324; Trautman v. Schroeder, 230 Mo. App. 985, 93 S. W. (2d) 303; Trautz v. Lemp et al., 329 Mo. 580, 46 S. W. (2d)

135; Jordon v. Daniels, 224 Mo. App. 749, 27 S. W. (2d) 1052. It will not be necessary to analyze these cases. Neither of them supports the contention that instruction 5 is bad because it does not tie up with the letter. Defendants do not say or suggest in what way or manner instruction 5 should have referred to the letter.

Defendants say that plaintiff's instruction No. 5 is "argumentative in form, assumes facts, and eliminates defendants' theory of the facts." Manifestly, there is no substantial merit in this complaint.

Defendant's refused instruction No. 4 follows: "The jury are instructed that even though they may find from the evidence that John R. Weakley signed and executed the $20,000.00 note sued on in the second count of plaintiff's petition, yet, if you further find that there was no consideration therefor, and that the said Weakley received no bonds therefor, and that said note was all a gift, and that, at the time said note was so signed and executed, if it was, it was understood and agreed to by and between the said Weakley and the plaintiff, Ada A. Atchison, that said note was not to be paid until after the death of the said John R. Weakley, then, under the law, said note was and is null and void, and, if you so find the facts to be, your verdict will be for defendants and against the plaintiff on the second count of the petition and on the $20,000.00 note sued on therein."

The court gave defendants' instructions 3 and 6, as follows:

"(3) The jury are instructed that even though you may find from the evidence that John R. Weakley signed and executed the $20,000.00 note sued on in the second count of plaintiff's petition, yet, if you further find that there was no consideration therefor, and that the said John R. Weakley received no bonds therefor, then, under the law, said note is null and void, and if you so find the facts to be, your verdict will be for the defendants and against the plaintiff on the second count of the petition, and on the $20,000.00 note sued on therein."

"(6) The jury are instructed that the burden is upon the plaintiff to prove by the greater weight of all the credible evidence in this case, to the reasonable satisfaction of the jury, that the alleged or claimed gift of $19,000.00 in registered U. S. bonds were given to her, the plaintiff, by the said John R. Weakley in December, 1933, and if upon a consideration of all the evidence the jury finds that plaintiff has not shown said fact, if it be a fact, by the greater weight and preponderance of the evidence, then you should find this issue against the plaintiff, and in favor of the defendant estate."

It will be noted that everything in defendants' refused instruction 4 is, in effect, covered by defendants' given instructions 3 and 6, when considered together, except that the note was not to be paid until after Weakley's death.

If the $20,000 note was executed as plaintiff's case tends to show, and the jury so found, then it would not be of consequence that the note was not to be paid until after Weakley's death. Maze v. Baird, 89 Mo. App. 348; Robbins v. Estate of Robbins, 175 Mo. App. 609, l. c. 615, 158 S. W. 400; 8 C. J. 136, Sec. 236; 10 C. J. S., p. 544, Sec. 96; 8 Am. Jur., Bills and Notes, p. 27, Sec. 281.

Complaint is made on the refusal of defendants' instructions 5 and 7. These, respectively, told the jury that in passing on the question as to whether Weakley signed the $20,000 note or made a gift of the bonds to ''take into consideration all the facts and circumstances in connection with such alleged transaction and shown in evidence.'' These instructions are cautionary, and their giving was within the sound discretion of the court. Certainly the jury was not in any way limited in the consideration of defendants' evidence by the refusal of these instructions.

There is no merit to the assignment on the alleged hostile attitude of the court towards defendants and their counsel. The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.