Lota VOSBURG, Plaintiff-Respondent,

v.

Archie SMITH, Executor of Estate of Sarah Ann Smith, Deceased, Defendant-Appellant.

No. 7253.

Springfield Court of Appeals.

Missouri.

Oct. 26, 1954.

Esco V. Kell, West Plains, for defendant-appellant.

Green & Green, West Plains, for plaintiff-respondent.

STONE, Judge.

Defendant, as executor of the estate of Sarah Ann Smith, deceased, appeals from an adverse judgment of $2,500 entered, following trial by jury in the Circuit Court, upon a demand originally filed in the probate court by plaintiff, decedent's daughter, "for services rendered Sarah Ann Smith in nursing, medicine, washing, ironing, furnishing food, clothing, board and lodging from April 29, 1948, to December 20, 1951, all at special instance and request of Sarah Ann Smith—1335 days @ $5.00 per day, $6,675.00." Valentine Smith and Sarah Ann Smith, his wife, were living in Willow Springs, Missouri, when Valentine died in

1947 at the age of 92, leaving his widow, Sarah, then 88 years of age, and five children, Archie of Willow Springs, Hillard M. of Springfield, Missouri, Elmer of Oklahoma, W. R. of Virginia, and Mrs. Cecil V. (Lota) Vosburg of Delco, Idaho, plaintiff herein. Hillard, a witness for defendant and the only son who testified, said that his mother then "could be up and around." Sarah continued to live at Willow Springs until April, 1948, when plaintiff "came for the purpose of getting mother and taking her back" to Idaho. The record does not show plainly why plaintiff came for her mother; but, although Hillard testified that, while plaintiff was in Willow Springs, "mother would decide at times she didn't want to go and sister (plaintiff) would encourage her to go ahead and persuaded her to go," he (Hillard) frankly conceded that he also had "urged" his mother to accompany plaintiff to Idaho and that he had thought that "it is her (plaintiff's) place to take care of her (Sarah)" —"we all thought so." In any event, Sarah went to Idaho with plaintiff, arriving there on April 28, 1948, and thereafter lived in plaintiff's home until her (Sarah's) death on December 20, 1951.

Although, when taken to Idaho, Sarah was mentally alert and in good health for a person of her age, "she was very feeble and couldn't see well—she had to be led to the bathroom and to her meals." "Occasionally she would wet the bed, perhaps once in the night and once a day, and she frequented the bathroom very often and she couldn't see well, so the bathroom had to be cleaned." Plaintiff's husband said that "I have seen my wife clean an entire bathroom as many as five times a day." Sarah was never left alone in the house "because they were afraid she would fall down the basement steps or wander away." The evidence shows that her physical and mental condition deteriorated gradually. During the last year of her life, she was in bed most of the time; and, when attended by a physician on June 2, 1951, about 6½ months prior to her death, she was very senile, "suffering from arteriosclerosis with marked mental changes," and in such condition that it was necessary for plaintiff "to lift her in and out of bed, lift her on a commode, take her meals to her, read to her, and treat her generally as a child." During the last 2 months of her life, plaintiff was bedfast, lost control of her kidneys and bowels, and had to be "diapered just like a child." Sarah "still would eat and drink, but she couldn't feed herself or hold her cup." The bed had to be changed frequently, and Sarah had to be watched to prevent her from turning over and falling out of bed. "It was endless to take care of her and watch her all of the time"—"she was more care than a sick baby." In short, plaintiff's uncontradicted evidence adequately demonstrated that the services rendered to her aged and infirm mother were burdensome, onerous and frequently disagreeable, but that they were discharged with filial fidelity and devotion.

Seven witnesses, namely, plaintiff's husband, two daughters, a son-in-law, two neighbors and a physician, testified that they had heard Sarah, after she came to her daughter's home in Idaho, make such statements as "you (plaintiff) will be well paid for taking such good care of me," "she (plaintiff) will get good pay when it is all said and done," and "she will be paid for my care—I'm not a pauper—I have means to pay my way." One of plaintiff's daughters said that, while at breakfast two or three days after her arrival in Idaho, Sarah had commented about "what a wonderful breakfast it was," had told plaintiff "you will be well paid for taking such good care of me," and had added that Valentine Smith (her deceased husband) had stated "that was what the estate was for, was to take care of me as long as I lived." Plaintiff's husband said that he had heard Sarah tell plaintiff "you will be paid well for this" not less than fifty times. And, Dr. Hugh E. Dean testified that, when he first attended Sarah at plaintiff's home on June 2, 1951, she told him "my daughter will pay for my care—I am paying her to take care of me." *Defendant* introduced in evidence 28 checks drawn on the State Bank of Willow Springs in the aggregate sum of $1,019.78, dated at irregular inter-

vals during the period from December 6, 1948, to December 14, 1951, issued in varying amounts (1 check was for $75, 10 were for $50 each, and the remainder were for lesser amounts from $40 to $19), all payable to plaintiff, and all bearing notations such as "for care of mother," "for expenses," or "for expense for sis." Of these 28 checks, 17 were signed "Mrs. Valentine Smith—by Archie Smith" (with minor variations as to initials) and 11 were signed "Archie H. Smith." Hillard said that these checks were drawn on Sarah's bank account in Willow Springs.

■ Relying upon the long-recognized principle that services rendered by a child to the parent are presumed to be gratuitous[1], defendant insists that his motion for a directed verdict should have been sustained. But, the presumption of gratuitous service affects only the burden of proof, casting upon the child the burden of overcoming such presumption and of proving an agreement to pay[2]; and, although mere expressions of gratitude or intended generosity are not alone sufficient[3] and claimant's evidence must be clear and convincing[4], it is well-settled that proof of an agreement or mutual understanding for payment[5], upon which recovery may be

had, need not be by direct testimony but may be by facts and circumstances from which such agreement or mutual understanding properly may be inferred[6]. "It is enough for the claimant to adduce evidence from which the jury might find that he and the deceased understood that the services rendered were not voluntary, but were to be remunerated." Brown v. Holman, 292 Mo. 641, 238 S.W. 1065, 1067(2); Chandler v. Hulen, 335 Mo. 167, 71 S.W.2d 752, 755(2); Liebaart v. Hoehle's Estate, Mo.App., 111 S.W.2d 925, 929(7).

■ Considered in the light of the foregoing principles, we have no doubt but that the evidence in the instant case was sufficient to permit a finding by the jury that there was an agreement or mutual understanding between plaintiff and her mother, Sarah, that plaintiff should be compensated for services rendered. It is true that, as defendant earnestly argues, there was evidence from which the jury could have reached a contrary conclusion and a different result. Certain statements in plaintiff's letters to Archie while Sarah was in Idaho lend strong support to defendant's contention that plaintiff then did not expect to receive any compensation other than that represented by the checks

---

1. Chandler v. Hulen, 335 Mo. 167, 71 S.W. 2d 752, 755(1); Bircher v. Boemler, 204 Mo. 554, 103 S.W. 40, 42; Kostuba v. Moeller, 137 Mo. 161, 38 S.W. 946, 950; Baldwin v. Kansas City Rys. Co., Mo. App., 218 S.W. 955, 956(1); Fitzpatrick v. Dooley, 112 Mo.App. 165, 86 S.W. 719, 720.

2. Liebaart v. Hoehle's Estate, Mo.App., 111 S.W.2d 925, 929(9); Hyde v. Honiter, 175 Mo.App. 583, 158 S.W. 83, 85; Hartley v. Hartley's Estate, 173 Mo.App. 18, 155 S.W. 1099, 1101(6).

3. Roller v. Montgomery's Estate, Mo.App., 80 S.W.2d 246, 248; Clow v. Wormington, Mo.App., 206 S.W. 415, 416–417(3); Louder v. Hart, 52 Mo.App. 377, 381; Woods v. Land, 30 Mo.App. 176, 181(2).

4. Farris v. Faris' Estate, Mo.App., 212 S.W.2d 71, 75; Trantham v. Gullic, Mo. App., 201 S.W.2d 522, 527(4); Smith v. Davis' Estate, 206 Mo.App. 446, 230

S.W. 670, 673(4); Koch v. Hebel, 32 Mo.App. 103, 108.

5. "A mutual understanding that such services will be paid for means an intention and willingness to pay on the one hand and at the time the services are rendered, an expectation to be compensated on the other, with knowledge of the intention to pay." Trantham v. Gullic, Mo.App., 201 S.W.2d 522, 527(5).

6. Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S.W.2d 49, 51(5); Lillard v. Wilson, 178 Mo. 145, 77 S.W. 74, 76; Wandling v. Broaddus, Mo.App., 265 S.W. 1003, 1004(1, 2); Baker v. Lyell, 210 Mo.App. 230, 242 S.W. 703, 707(3, 4); Hyde v. Honiter, supra, 158 S.W. loc. cit. 85–86(4, 5); Cupp v. Mc-Callister, 144 Mo.App. 111, 129 S.W. 435 (3); Stone v. Troll, 134 Mo.App. 308, 114 S.W. 82, 83(2, 3); Cole v. Fitzgerald, 132 Mo.App. 17, 111 S.W. 628, 630(3); Eisiminger v. Stanton, 129 Mo.App. 403, 107 S.W. 460, 461.

drawn on Sarah's bank account. However, when the statements in plaintiff's letters are read in context, as they should be [see and contrast Wooldridge v. Bryan, 307 Mo. 234, 270 S.W. 658, 661–662(6, 7)], we think it clear that such statements constituted "extrajudicial admissions" or "quasi-admissions," as distinguished from "judicial admissions" or "true admissions"[7]; that, there being no elements of estoppel in the instant case, such extrajudicial admissions as plaintiff made in her letters to Archie were "nothing but * * * item(s) of evidence, and * * * not in any sense final or conclusive" [Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 917(20)]; and that, there having been substantial evidence from which an agreement or mutual understanding for payment could have been inferred, the weight and value of plaintiff's admissions were for the jury[8].

[9, 10] In cases of this character where plaintiffs are precluded from testifying (Section 491.010, RSMo 1949, V.A.M.S.), their intention to charge for services is frequently "not so clear" [Chandler v. Hulen, supra, 71 S.W.2d loc. cit. 755(5)]; but, although the record in the instant case leaves ample room for argument as to how much she intended to charge and from whom she might have intended to collect, plaintiff undoubtedly sought payment for her services from the outset. For, her letters to Archie were replete with pointed and sometimes pungent references to the hardships, difficulties and expenses incident to caring for her mother, what it "ought to be worth" to care for Sarah, what it would

cost to keep her in a rest home, and other financial aspects of the situation. Upon trial, in response to the question "to your knowledge did your mother (plaintiff) expect to be paid?", plaintiff's daughter answered, *without objection*, "Yes." The probative worth and effect of this answer, although it might have been excluded on proper objection, was for the jury[9]. Furthermore, it might be said plausibly that plaintiff's intention to charge was recognized by the making of 28 payments from Sarah's bank account to plaintiff, although whether, under the circumstances of this case, those checks constituted payment in full for plaintiff's services likewise was for the jury. Fry v. Fry, 119 Mo.App. 476, 94 S.W. 990, 991(3); Aldridge v. Shelton's Estate, Mo.App., 86 S.W.2d 395, 400(17).

In arguing the legal insufficiency of plaintiff's case, defendant also asserts that plaintiff pleaded "an express contract for services * * *, at the special instance and request of the deceased, for 1335 days at $5 per day," and that, having failed to establish that Sarah agreed to pay $5 per day, there was a total failure of proof as to the contract pleaded. Plaintiff tried and submitted her case on quantum meruit and here insists that recovery on that theory was permitted under her demand as filed. If plaintiff showed an agreement or mutual understanding that she was to be paid for services rendered to Sarah, then "based upon proof of her performance of services and a demonstration of the agreement or mutual understanding rebutting the presumption the services were gratuitous, she may at law recover the

7. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, 917(20); Wigmore on Evidence (3rd Ed.), Vol. IV, Sec. 1058, p. 20; Id., Vol. IX, Sec. 2594a, p. 597; 31 C.J.S., Evidence, § 270, p. 1022.

8. Ruckert v. Moore, 317 Mo. 228, 295 S.W. 794, 801(11); Fitzgerald v. Thompson, 238 Mo.App. 546, 184 S.W.2d 198, 202 (2); Butner v. Union Pac. R. Co., 236 Mo.App. 1134, 163 S.W.2d 100, 108(10); Aeolian Co. of Missouri v. Boyd, Mo.App., 138 S.W.2d 692, 695(2); Otto v. Metropolitan Life Ins. Co., 228 Mo.App. 742, 72 S.W.2d 811, 815.

9. Goodman v. Allen Cab Co., 360 Mo. 1094, 232 S.W.2d 535, 539(4); DeMoulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 565(3); Steeley v. Kurn, 348 Mo. 1142, 157 S.W.2d 212, 213(4); Doyle v. St. Louis Merchants' Bridge Terminal Ry. Co., 326 Mo. 425, 31 S.W.2d 1010, 1012 (4), certiorari denied 283 U.S. 820, 51 S.Ct. 345, 75 L.Ed. 1435; Burley v. State Social Security Commission, 236 Mo.App. 930, 163 S.W.2d 95, 96(3); Cox v. Frank L. Schaab Stove & Furniture Co., Mo.App., 83 S.W.2d 211, 216(4); Ridenhour v. Oklahoma Contracting Co., Mo.App., 45 S.W.2d 108, 112(4).

reasonable value of the services rendered." Kopp v. Traders Gate City Nat. Bank, 357 Mo. 659, 210 S.W.2d 49, 52(7). Plaintiff's demand in the instant case did not plead the terms of a contract or seek recovery of damages for breach of contract. That the demand alleged that services had been rendered "at special instance and request of Sarah" did not characterize the action as one on express contract rather than on quantum meruit [Muench v. South Side National Bank, Mo., 251 S.W.2d 1, 5(9); Balsano v. Madden, Mo.App., 138 S.W.2d 660, 662–663(1)], and comparison with demands in other reported actions on quantum meruit impels the conclusion that plaintiff's demand in the instant case permitted recovery on that theory [10].

▮ In reaching this conclusion, we also have in mind that formal pleadings are not required in presentation of demands in the probate court [In re Franz' Estate, Mo., 245 S.W.2d 1, 5(3)]; that "a demand filed in a probate court is not to be judged by the strict rules of pleading applied to a petition in the circuit court" but "is sufficient if it gives reasonable notice to the adverse party of the nature and extent of the claim made, and if it be specific enough so that a ruling thereon will become res judicata of the matters involved" [In re Thomasson's Estate, 346 Mo. 911, 144 S.W. 2d 79, 81–82(4)]; and that, if " 'it is impossible to say with definiteness whether the plaintiff is counting upon an express contract or upon quantum meruit, he will be permitted to recover upon whichever of the two theories his evidence may warrant' " [In re Hukreda's Estate, Mo., 172 S.W.2d 824, 826(5)]. The cases cited by defendant [Farris v. Faris' Estate, Mo. App., 212 S.W.2d 71, 74(3); Whitworth v. Monahan's Estate, Mo.App., 111 S.W.2d 931, 933(2); Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024, 1029(2)] were found to

have been brought on express contracts because, in each instance, "the claimant, having elected to plead the contract with particularity, (was) bound by it" [Farris v. Faris' Estate, supra, 212 S.W.2d loc. cit. 74(3)]—a principle wholly inapplicable here. Under the familiar rule that, in testing the sufficiency of the evidence to make a submissible case, the plaintiff's evidence must be considered as true, plaintiff must be accorded the benefit of every inference of fact which can be reasonably drawn therefrom, and defendant's evidence must be disregarded except insofar as it may aid plaintiff's case [Smith v. Siedhoff, Mo., 209 S.W.2d 233, 234(1); Williamson v. St. Louis Public Service Co., 363 Mo. 508, 512–513, 252 S.W.2d 295, 297(1); Sollenberger v. Kansas City Public Service Co., 356 Mo. 454, 462, 202 S.W.2d 25, 29(2)], we think it clear that plaintiff made a submissible case on quantum meruit, a permissible trial theory under her demand, and that defendant's motion for a directed verdict properly was overruled.

▮ Defendant also complains that "the court erred in overruling defendant's motion for judgment notwithstanding verdict, as the verdict was against the evidence and the greater weight of the evidence." Passing the fact that the motion for judgment notwithstanding the verdict has been abolished (Section 510.380, RSMo 1949, V.A.M.S.) and treating defendant's motion as one "to have the verdict and * * * judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict" (Section 510.290, RSMo 1949, V.A. M.S.), the legal frailty of this complaint is that it erroneously assumes that an appellate court can and should weigh the evidence in a jury-tried case. It is not within our province to pass on the credibility of witnesses or to weigh the evidence [11], for

10. Muench v. South Side National Bank, Mo., 251 S.W.2d 1, 2–3; In re Stein's Estate, Mo.App., 177 S.W.2d 678, 679, 681–682(1); Liebaart v. Hoehle's Estate, supra, 111 S.W.2d loc. cit. 926, 929(3); Aldridge v. Shelton's Estate, supra, 86 S.W.2d loc. cit. 396, 398(10); Blackwell

v. DeArment's Estate, Mo.App., 300 S.W. 1035, 1036, 1037(1).

11. In re Stein's Estate, supra, 177 S.W.2d loc. cit. 682(4); Hurst v. Hurst's Estate, Mo.App., 151 S.W.2d 543, 544(5); Aldridge v. Shelton's Estate, supra, 86 S.W. 2d loc. cit. 398(8); Otto v. Metropolitan

"(n)othing in our jurisprudence is more firmly established than the rule that a jury's verdict is final (and not reviewable) on the fact issues, if its findings are supported by substantial evidence, and that our review of that question is limited to determining whether the evidence, considered most favorably to the result reached by the jury, is substantial evidence from which the jury could reasonably reach the result it did." Machens v. Machens, Mo., 263 S.W.2d 724, 734(16). " '(W)here, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.' " Nance v. Atchison, T. & S. F. Ry. Co., 360 Mo. 980, 232 S.W.2d 547, 554(8, 9)[12].

■ Defendant's point that "the trial court erred in giving plaintiff's instruction 2" is not in substantial compliance with 42 V.A.M.S. Supreme Court Rule 1.08 and preserves nothing for appellate review. Meierotto v. Thompson, 356 Mo. 32, 201 S.W.2d 161, 165(4); Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W.2d 552, 557–558(4). However, there is no merit in defendant's principal complaint about instruction 2 as gathered from his argument, i. e., that it did not require the jury "to actually find that a contract to pay for services ever existed." For, instruction 2 did not direct a verdict for plaintiff but, in substance and effect, simply defined a "mutual understanding" for payment in language similar to that found in several reported opinions. Although instruction 2 is not approved as a model, we could not find, in view of the cases cited in footnotes 5 and 6, supra, that this instruction is subject to the quoted criticism or that the giving thereof constituted reversible error.

■ Defendant also asserts that plaintiff's husband was disqualified under "the dead man's statute" (Section 491.010, RSMo 1949, V.A.M.S.), and that the court erred in overruling objections to his testimony. Since the record plainly shows that plaintiff's husband was not a party to the contract or cause of action in issue and on trial, he was a competent witness for his wife and defendant's objections to his testimony properly were overruled [13].

■ Finally, defendant complains "because the court erred in permitting counsel for the plaintiff to argue before the jury that plaintiff could not testify." Although this assignment might well be treated as abandoned since it was not developed in defendant's brief by citation of authorities and argument [14], we again pass the question as to whether the alleged error has been preserved for review. During the closing argument of plaintiff's counsel, three references were made to the fact that plaintiff could not testify because of "the dead man's statute". Section 491.010,

Life Ins. Co., 228 Mo.App. 742, 72 S.W. 2d 811, 815(4, 5), 816–817(9).

12. In this connection, see also Lansford v. Southwest Lime Co., Mo., 266 S.W.2d 564, 568(5); Higgins v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 264, 241 S.W. 2d 380, 384(1); Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 259 S.W.2d 132, 139(8, 9); Abresch v. Schultz, Mo. App., 216 S.W.2d 134, 140(9).

13. Section 491.020, RSMo 1949, V.A.M.S.; Slagle v. Callaway, 333 Mo. 1055, 64 S.W. 2d 923, 928(2, 3), 90 A.L.R. 1366; Ragsdale v. Achuff, 324 Mo. 1159, 27 S.W.2d 6, 12(2); Cantrell v. Sheppard, Mo.App.,

247 S.W.2d 872, 874(1); In re Stein's Estate, supra, 177 S.W.2d loc. cit. 682–683(7); Witte v. Smith, 237 Mo.App. 639, 152 S.W.2d 661, 667(8); Mollett v. Beckman, Mo.App., 78 S.W.2d 886, 891 (10); Martin v. Abernathy, 220 Mo.App. 76, 278 S.W. 1050, 1051(4).

14. Lansford v. Southwest Lime Co., supra, 266 S.W.2d loc. cit. 565–566(1); Merrick v. Bridgeways, Inc., 362 Mo. 476, 241 S.W.2d 1015, 1019(7); Warinner v. Nugent, 362 Mo. 233, 240 S.W.2d 941, 945 (7), 26 A.L.R.2d 278; Palmer v. Lasswell, Mo.App., 267 S.W.2d 492, 498(14); Baker v. Atkins, Mo.App., 258 S.W.2d 16, 22(15).

RSMo 1949, V.A.M.S. Defendant's objections to the first two references were overruled, but objection to the third reference was sustained. Although not aided by counsel on this point, we have found substantial and persuasive authority to the effect that it is improper for an attorney, in his closing argument, to comment on his failure or inability to produce a witness or adduce testimony by reason of such statutory disqualification [15]. But, even though the argument of plaintiff's counsel was in this respect patently improper and defendant's initial objection thereto should have been sustained, the judgment may not be reversed unless this constituted error "materially affecting the merits of the action." Section 512.160(2), RSMo 1949, V.A.M.S. In considering this question we are handicapped by the fact that the transcript does not present the arguments of counsel in their entirety but contains only the brief statements to which objections were made. However, we observe that, when objection to the third improper statement was sustained, defendant's counsel made no request for further action by the trial court; and, as we have noted, defendant's counsel is content on appeal with a naked statement of this complaint in his "points relied on" without citation of authority and without subsequent mention in his argument. These circumstances, coupled with the fact that there is no complaint that the verdict was excessive, suggest that defendant's counsel did not regard the infractions of opposing counsel as of major importance at the time and does not consider this point as of much

moment on appeal. From a consideration of the entire record, we are unable to say with assurance that the improper argument of plaintiff's counsel materially affected the merits of the action and we have concluded that we should not, for this error alone, reverse and remand the cause for another trial [16].

Plaintiff's motion to dismiss defendant's appeal is overruled, and the judgment is affirmed.

McDOWELL, P. J., concurs.

15. Johnson v. Johnson, 166 Mo.App. 732, 150 S.W. 1130, 1131(4); Logsdon v. Segler, Tex.Civ.App., 225 S.W.2d 435, 437 (6); Vetter v. Nicholson, Tex.Civ.App., 121 S.W.2d 1024; Ashmore v. Pike, Tex. Civ.App., 108 S.W.2d 276, 277(1); Gray v. Cheatham, Tex.Civ.App., 52 S.W.2d 762, 763(4); Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 246(3), rehearing denied 270 S.W. 1001; Laird v. Laird's Estate, 127 Mich. 24, 86 N.W. 436; Blaisdell v. Davis, 72 Vt. 295, 48 A. 14, 18–19(13); Owings v. Dayhoff, 159 Md. 403, 151 A. 240, 246(13, 14). See and compare also Koch v. Hebel, supra, 32 Mo.App. loc. cit. 113–115(4); Colker v. Connecticut Fire Ins. Co., 224

Ky. 837, 7 S.W.2d 502, 506(10); Wright v. Davis, 72 N.H. 448, 57 A. 335, 336 (4).

16. Section 512.160(2), RSMo 1949, V.A. M.S.; Atchison v. Weakley, 350 Mo. 1092, 169 S.W.2d 914, 916–917(2); State ex rel. St. Louis-San Francisco Ry. Co. v. Cox, 329 Mo. 292, 46 S.W.2d 849, 852–854(11), quashing certiorari Hawkins v. St. Louis-San Francisco Ry. Co., Mo. App., 31 S.W.2d 596; Scott v. Kansas City Public Service Co., Mo.App., 115 S. W.2d 518, 526(17, 18); Arnold v. Metropolitan Life Ins. Co., Mo.App., 89 S.W.2d 81, 83(2, 3); Burns v. United Rys. Co. of St. Louis, 176 Mo.App. 330, 158 S.W. 394, 397(6).