MARY C. OTTO, RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, APPELLANT.—72 S. W. (2d) 811.

Kansas City Court of Appeals. April 30, 1934.

*Burrus & Burrus* and *Gibson & Kirtley* for respondent.

*Leroy A. Lincoln* and *Meservey, Michaels, Blackmar, Newkirk & Eager* for appellant.

REYNOLDS, C.—This is a suit upon an industrial, weekly-premium policy of life insurance issued by defendant upon the life of Henry E. Otto, by which it promised to pay in the event of the death

of the said Otto the sum of $220, upon certain conditions therein specified, to his executor or administrator.

The said Otto was a resident of Jackson County, Missouri, and, while a resident of said county, died on the fourth day of April, 1930, with said policy in full force. The plaintiff is his widow and, on August 29, 1930, procured an order of the Probate Court of Jackson County refusing a grant of letters of administration on the estate of the deceased and setting off to her, as his widow, the said policy of insurance as her absolute property.

Thereafter, this suit was instituted before Thomas H. Knight, a Justice of the Peace of Blue Township, Jackson County, Missouri, on September 8, 1930; and, from the judgment rendered by said justice, an appeal was had to the Circuit Court of Jackson County, Missouri, at Independence, where, from an adverse judgment upon trial had before the court and a jury at the September term, 1932, thereof, the defendant, after an unsuccessful motion for a new trial and in arrest of judgment, took this appeal.

The policy sued upon was issued and delivered to the deceased Otto on December 9, 1929. It was issued upon a written application therefor by the insured and without any physical or medical examination of the insured by some physician being required by defendant.

The plaintiff's statement upon which the cause was instituted and tried alleges the corporate existence of defendant and that it was lawfully engaged in general life insurance business in Missouri. It further alleges the issuance, on December 9, 1929, of the policy sued upon, the death of the insured therein on April 4, 1930, the plaintiff's relationship as wife to the insured, the order by the Probate Court of Jackson County refusing letters of administration upon the estate of deceased insured, the performance of all conditions of the policy in suit by deceased, the demand upon defendant for payment of the amount due upon said policy, the refusal of defendant to make such payment, and the defendant's denial of liability under such policy. It was further alleged in said statement that defendant had vexatiously refused to pay the amount due on said policy. Plaintiff asked judgment for the amount of said policy in the sum of $220 and for an additional ten per cent on the said amount of $220, together with an attorney's fee of $200. The defendant made no written answer but, in substance, denied liability upon the grounds that the insured, in his application, had misrepresented the condition of his health and that, at the time of said application and of the issuance of the policy, he was not in sound health but was afflicted with heart disease, from which he afterward died. The plaintiff, upon the trial, in addition to other evidence, introduced the policy sued upon, together with the order of the probate court vesting the policy in her, and made proof of the death of insured and of all matters required to make a prima facie case in her behalf.

The policy, among other things, provided:

"If, (1) the Insured is not alive or is not in sound health on the date hereof; or if (2) before the date hereof, the Insured has been rejected for insurance by this or by any other company, order or association, or has, within two years before the date hereof, been attended by a physician for any serious disease or complaint, or, before said date, has had any pulmonary disease, or chronic bronchitis or cancer, or disease of the heart, liver or kidneys, unless such rejection, medical attention or previous disease is specifically recited in the 'Space for Endorsements' on page 4 in a waiver signed by the Secretary, . . . then, in any such case, the Company may declare this Policy void and the liability of the Company in the case of such declaration or in the case of any claim under this Policy shall be limited to the return of premiums paid on the Policy, except in the case of fraud, in which case all premiums will be forfeited to the Company. . . .

"Proofs of death shall be made upon blanks to be furnished by the Company and shall contain the answer to each question propounded to the claimant, to physicians and to other persons, and shall contain the record, evidence and verdict of the coroner's inquest, if any be held. All the contents of such proofs of death shall be evidence of the facts therein stated in behalf of, but not against, the Company."

The defendant introduced in evidence the application of insured, in which it was stated that the insured had never had any disease of the heart and that he was then in sound health and had no physical defect of any kind and that he had not been under the care of any physician within three years prior to November 18, 1929, the date of the application. It was further certified by the applicant that the statements therein made were full and complete and that the policy applied for should not be binding unless, upon its date, the applicant should be alive and in good health. In connection with this application and appended thereto, there also appeared the certificate of the agent of the defendant who took the application that the assured was in good health, of temperate habits, and of good moral character and that he believed the answers in Part A of the application were correct and that he advised that the policy be issued and that he had personally inspected the insured and was of the opinion that he was in good health. The defendant introduced the proofs of death furnished by plaintiff upon the death of the insured, together with a statement of Dr. F. L. Cook, that attending physician of the insured, which accompanied said proofs and was incorporated as a part thereof. From said proofs, it appeared that there was a statement therein by the plaintiff that the cause of death of the insured was cardiac asthma of a duration of one month. From the accompanying statement of Dr. Cook, the cause of death was given as cardiac asthma chronic and myocarditis, with which insured was

afflicted, from a personal knowledge known to be of a duration of five months and from history given of six months.

The defendant also introduced in evidence a certified copy of the death certificate issued by Dr. F. L. Cook, the attending physician, upon the death of the insured, which recited concerning the death of insured that the cause thereof was cardiac asthma chronic, auricular fibrilation hypertrophy chronic of a duration of two years.

Defendant also offered in evidence the hospital record of the insured in the Independence Sanitarium, which record, however, does not appear to have been preserved. There was also in evidence the admitted testimony of Dr. F. L. Cook, the attending physician, tending to show that the insured died from heart disease and that he was afflicted with such disease on the ninth day of December, 1929, at the time the policy such disease on the ninth day of December, 1929, at the time the policy herein was issued to him, and also at the time the application therefor was made on November 18, 1929, and prior to such date and that he was first called September 16, 1929. The defendant also introduced Dr. Calvin Atkins, who gave evidence tending to show that he was called to visit insured in July, 1928, and found his heart condition bad; that he was troubled with rapid and difficult breathing accompanied by wheezing and known as myocarditis, cardiac asthma, and auricular fibrilation; that it was hot weather and, if insured had become overheated, that might have contributed to his condition at that time; that he was again called about August or September, 1929, and found the insured with a fibrilating heart indicating heart disease, commonly known as cardiac asthma and myocarditis; that his disease was chronic and progressive; that his diseased condition was such that, in his opinion, he could not have recovered therefrom by the eighteenth day of November, 1929, or December 9, 1929, but would, on said dates, still be suffering therefrom; that the ordinary symptom of cardiac asthma chronic is wheezing and of auricular fibrilation and myocarditis is shortness of breath; that one afflicted with such a diseased heart is not a stout man and cannot do heavy work but that light work would not hurt him; that one in deceased's condition in July, 1928, continuing to live until April 4, 1930, would ordinarily show symptoms of having such disease during such time.

It appears, from evidence in the record, that the application was made upon a blank form provided by defendant, upon which the questions asked applicant were found printed with blank spaces following such questions for the respective answers thereto; that, while it appears that the application was signed by the insured, the answers to such questions were written by Mr. Brannan, the defendant's agent, who took the application. It was claimed by such agent upon the trial that he asked or read each question to the deceased who gave him the answer in each instance and that he inserted the answer as given at the proper place.

It appears, however, that plaintiff testified upon the trial that she was present at the time the application was taken and, upon being asked what Mr. Brannan did, replied, "Why, he asked his name and where he lived, the number of the place, and where he was born, and his age." She was asked the further question whether he had asked the deceased if he had been under the care of any physician within three years; and she replied, "No, sir, not that I heard."

It appears that, like the application, the proofs of death were made upon a printed form furnished by defendant, upon which the questions asked were printed with blank spaces following each for the answers to be inserted. The answers to each of the questions appear to have been written therein by defendant's agent, Brannan, the same person who took the application. The same was signed by the plaintiff. The agent testified that he read each question to plaintiff or asked her each question and wrote the exact answer she gave in each instance.

The plaintiff, however, denied that he ever asked her any questions and stated that he merely brought the policy down and had her sign some papers, which she did. She denied she ever told him that the insured died from heart disease or that she told him her husband had been ill since September 15, 1929, or that his illness had been of five months' duration.

There was evidence in the record in behalf of plaintiff, in chief and in rebuttal, from lay witnesses touching the appearance of insured as being healthy or otherwise and his activities during the last several years of his life, from the time of his marriage to plaintiff and up until the time of his death. The plaintiff conducted a large boarding house of some ten to fourteen rooms at Independent, serving meals and furnishing rooms; and insured assisted her. He took in coal and kept seven stoves, five of which were upstairs. He would get the groceries and helped in cooking and in looking after the boarders. He also gardened, at times making rather a large garden. At one time, he cared for about four hundred chickens. The plaintiff testified, when asked as to his appearance and activities in November, 1929, that he always got around and that she did not see anything wrong with him in any way. Some of these witnesses who were with him frequently and saw him often testified that they never heard him complain of sickness or noticed any difficulty he had of shortness of breath or difficulty in getting his breath. The plaintiff testified that, about August, 1929, he became overheated and called Dr. Atkins for one visit; that he was soon over the troubles; that, about January, 1930, he had an attack of the grippe (she at first gave the date as January, 1929, but afterward corrected it to 1930); that, from such time forward, he gradually went down until he died; and that Dr. Cook treated him. She never knew of any doctor visiting him, other than Dr. Cook and Dr. Atkins on the one occasion when he was called.

· Other facts in the record will be noted as occasion may require.

At the close of all the evidence, the defendant requested an instruction in the ·nature of a demurrer directing a verdict in its favor, which was by the court denied.

Thereupon, the cause being submitted to the jury, it returned a verdict in favor of the plaintiff for $220 with interest from April 4, 1930, as six per cent per annum and for the further sum of $22 for vexatious delay and for $175 attorney's fees; and judgment was rendered in accordance therewith. It appears also that defendant tendered to plaintiff the amount of premiums received by it upon the policy in the sum of $9.25 prior to the trial before the justice and, upon plaintiff's failure to accept the sum, deposited the same with the justice for plaintiff.

### OPINION.

The defendant upon this appeal assigns error as follows:

First, the court erred in refusing to sustain defendant's demurrer to the evidence at the close of the whole case and should have directed a verdict for the defendant.

Second, the court erred in giving instruction number 1 requested by plaintiff, submitting the question of penalties and attorney's fees to the jury.

1—In support of its contention that the court erred· in refusing its request for a peremptory instruction directing a verdict in its behalf, it insists that plaintiff cannot recover herein by reason of the admissions against interest made in the proofs of death furnished defendant and that such admissions stand unexplained and uncontradicted by any evidence in the record.

In view of the authorities in this State, such contentions upon the record herein cannot be maintained. [Burgess v. Pan-American Life Insurance Co. (Mo. App.), 211 S. W. 114 ((rev. Mo.), 230 S. W. 315-316); Bultralik v. Metropolitan Life Insurance Co. (Mo. App.), 233 S. W. 250-262; Ryan v. Metropolitan Life Ins. Co., 30 S. W. (2d) 190, 1. c. 195; Bruck v. John Hancock Mut. Life Ins. Co., 194 Mo. App. 529, 1. c. 537, 185 S. W. 753.]

2—It is true that, in instances where there is no explanation in the evidence of admissions in the proofs of death against interest or any contradiction thereof by substantial evidence, such admissions become conclusive, as contended by defendant. [Stephens v. Metropolitan Life Ins. Co., 190 Mo. App. 673, 176 S. W. 253; Castens v. Supreme Lodge Knights & Ladies of Honor, 190 Mo. App. 57, 175 S. W. 264; Bruck v. John Hancock Mut. Life Ins. Co., supra.] However, in instances where there is substantial evidence of other facts appearing, tending to explain or contradict such admissions, such admissions are prima facie only; and whether the facts are as shown by such admissions or otherwise becomes a question for the jury. [Stephens v. Metropolitan Life Ins. Co., supra; Crohmann v.

The Maccabees, 237 S. W. 875, l. c. 879; Burgess v. Pan-American Life Ins. Co., supra; Bultralik v. Metropolitan Life Ins. Co., supra; Ryan v. Metropolitan Life Ins. Co., supra; Bruck v. John Hancock Mut. Life Ins. Co., supra, l. c. 538.]

3—Any misrepresentations in the application with reference to matters not contributing to the death of the insured become immaterial and drop out of consideration by reason of Section 5732, Revised Statutes 1929. So, the only questions for consideration are whether the cause of the insured's death was heart disease and, if so, whether he was afflicted with such on the ninth day of December, 1929, the date of the issuance of the policy, or on November 18, 1929, the date of the application made therefor, or at some prior date.

There was evidence in the record tending both to explain and contradict the admissions appearing in the proofs of death, including the physician's statement incorporated therein to the effect that deceased died of heart disease and that he was afflicted therewith on the dates of November 18, 1929, and December 9, 1929, and prior thereto.

4—The statement made by plaintiff in the proofs of death, or the claimed statement so made by her, that the cause of death was cardiac asthma is not an admission by her that the insured was afflicted with such on either November 18, 1929, or December 9, 1929, or at any time prior to said dates. The answer credited to her was that the deceased died of cardiac asthma of one month's duration. The proofs show that he died April 4, 1930. There was, therefore, no admission by her in such statement that he was afflicted with such at an earlier date than March 3, 1930. Besides, she denied that she ever stated to the agent, who took the proofs of death and wrote in the answers to the questions, that deceased died of heart disease or had been ill September 15, 1929, or that his sickness had been of five months' duration. She denied, in fact, that such agent ever asked her any questions but stated that he merely asked her to sign a paper, which she did.

5—The statement of the attending physician, Dr. Cook, which plaintiff was required to furnish as a part of the proofs of death, as to the cause of death and its existence for a period covering the date of the application and the issuance of the policy and prior to such dates, while necessarily to be considered as an admission upon plaintiff's part that the insured died of heart disease with which he was afflicted on November 18, 1929, and December 9, 1929, and prior dates, was, nevertheless subject to explanation and contradiction by the evidence in the record of lay witnesses, who knew him and had long and frequent association with him for practically three years prior to his death, to the effect that he was active and engaged in laborious work during the time they knew him and gave no evidence of sickness or of a diseased heart or other unhealthy condition, that they had never known of his being sick until a short time before

his death and had never known him to be troubled with shortness of breath or wheezing, that he always got around and nothing wrong with him was seen, that he was up and about as any healthy man of his age—all negativing the idea that defendant was afflicted with heart or other disease and tending to show that he was in good health.

Such evidence, so long as it tended to show good health and negative a diseased condition, was competent. We are not concerned with its weight but only with the question of whether it is substantial and competent. [Bruck v. John Hancock Mut. Life Ins. Co., supra.; Conner v. Life & Annuity Assn., 171 Mo. App. 364, 157 S. W. 814; Ryan v. Metropolitan Life Ins. Co., supra.]

6—In addition to the testimony of other lay witnesses, the certificate of the agent who took the application of the insured, appended to said application as Parts B and D, stated that such agent had personally inspected the insured and was of the opinion that he was in good health; and it further certified that the insured was in good health, of temperate habits, and of good moral character and that he advised the acceptance of the application and the issuance of the policy. This was a direct contradiction of the physician's said statement, even though regarded as made by a lay witness. The weight of all of this evidence was for the jury. As said in the case of Bultralik v. Metropolitan Life Insurance Company, supra, whether a matter shown to have been misrepresented actually contributed to the death of the insured is a question for the jury. [Revised Statutes 1929, Section 5732; Bruck v. John Hancock Mut. Life Ins. Co., supra.] The burden of proof is upon the defendant, not only to show the misrepresentation but also to show that the matter misrepresented contributed to the death. [Prindle v. Fidelity & Casualty Co. of New York, 233 S. W. 252, l. c. 255.] The recitals in the proofs of death by the attending physician are not conclusive of such facts unless it be a case where nothing whatsoever appears in evidence tending, in some way, to explain or contradict the admission or impair the force and effect thereof. So to allow would, in effect, be taking the case out of the operation of the statute above noted. [Bruck v. John Hancock Mut. Life Ins. Co., supra.]

7—Can it be said that there is nothing whatever in the evidence tending, in any way, to explain or contradict the admissions or impair the force and effect thereof? According to the evidence of those who knew him and were with him upon frequent and prolonged occasions, the insured never gave any evidence of sickness or of a diseased heart or of other diseased condition. He was up and around, like other healthy men of his age. He was up and around, and nothing wrong with him was ever seen until he was taken with the grippe in January previous to his death. He attended large numbers of chickens at times. He gardened on more than an ordinary scale. He assisted the plaintiff, his wife, in running a large board-

ing house, from ten to fourteen rooms, serving meals and furnishing rooms for boarders. He attended the fires and kept the stoves, getting kindling and fuel and carrying the same into the house and a large part of it upstairs. He purchased the groceries and supplies. He assisted about the house and in cooking and in looking after the comfort of the boarders. Dr. Atkins testified that one afflicted with heart disease of the character claimed would not be a stout man and could not do heavy labor. There is nothing in the evidence tending to show that the work and labor in which he was thus engaged during the later years of his life and covering the period of his alleged diseased condition exhausted or weakened him or that he suffered therefrom or was injured thereby or complained thereof. That he was able to do such work without any manifestations of evil effects certainly negatives the idea of a diseased condition and is in contradiction of any claim that he was afflicted at such times with a diseased heart or other diseased condition. Further, the doctor testified that the existence of the heart disease claimed was manifested by irregular breathing and shortness of breath and by wheezing. Except on the two occasions when the doctor visited the insured, there is no evidence that he was ever troubled with shortness of breath or wheezing. He also testified that on the first occasion he visited the insured, the weather was hot and, if insured was overheated, such overheating might have contributed to his condition. There was testimony by the plaintiff that, on such occasion, he had become overheated and, for such reason, had called the doctor.

The doctor also testified that he would think that one afflicted as he claimed insured was from July, 1928, to April, 1930, would show symptoms of such affliction. Lay witnesses who were frequently associated with him over such period testified that they never noticed any difficulty with him in breathing and that he got his breath about as well as any one else. There was no evidence by any of the lay witnesses that they ever heard him sneeze or complain of sickness or weakness or of trouble in breathing. Besides, according to the certificate of defendant's agent who took the application, deceased was pronounced by him to be in good health on the date of the application, after a personal inspection made by him. It does not appear that the agent was a physician; but, in his business, the experience he had in observing and in inspecting applicants for insurance with a view to determining their conditions of health should, ordinarily, entitle his statement to some consideration. From the common observation and experience of mankind, it is not probable that one afflicted with a diseased heart of the character with which insured was claimed to be afflicted could perform the labor continuously which the evidence tends to show he did without some manifestations of such diseased condition and the effects thereof being brought about. To many minds, about as violent an exercise in which

one so afflicted could engage would be that of going up and down a stairway and especially so if carrying a heavy load one way. It is evident that the record is not barren of evidence tending, in some way, to explain or contradict the claim that insured died of heart disease or that he had ever been afflicted with it. We are not concerned with the weight of it. That is for the jury. As said by this court in Ryan v. Metropolitan Life Insurance Company, supra, with reference to evidence required to make a conflict with admissions, "As to the weight of the evidence, we have nothing to say. It is not a question of *quantity*, but whether there is *any* evidence creating a conflict for the determination of the jury." In this case, upon a full examination of all the evidence in the record and of the numerous authorities cited in the respective briefs of plaintiff and defendant, we hold there was evidence tending to create a conflict with the matters admitted for the determination of the jury.

8—It follows from what has been said that the evidence tending to show that, upon the dates of the delivery of the policy in suit and the application therefor and prior to such dates, the insured was in sound health and not afflicted with heart disease was sufficient for the submission of the question to the jury, along with all the evidence introduced by plaintiff upon the trial, including the proofs of death and other evidence in the record, and that the court did not err in refusing defendant's requested peremptory instruction directing a verdict in its favor.

9—Defendant next complains of the giving of instruction number 1 in behalf of plaintiff, submitting the question of penalties and attorney's fees to the jury. Upon an examination of the record and of authorities cited in the briefs, we are inclined to hold that this complaint is well founded. The rule in such matters seems to be well stated by this court in an opinion by Judge TRIMBLE in the case of Patterson v. American Insurance Company of Newark, N. J., 174 Mo. App. 37, 1. c. 44, 160 S. W. 59:

"It is true the whole question of vexatious delay is a question for the jury, as has been decided by Keller v. Insurance Co., 198 Mo. 440, but it is only so when from a general survey of all the facts and circumstances in the case an inference can be drawn that the refusal was unjustifiable and vexatious. [Keller v. Ins. Co., supra, 1. c. 460, 461.] And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty."

Applying such rule to the record in this case, we find no evidence from which it may be fairly said that defendant's refusal to pay the policy in suit was willful and without reasonable cause and,

therefore, unjustifiable and vexatious. The mere fact of an adverse judgment is no reason for convicting defendant of vexatious delay. The court erred in giving said instruction number 1 and in submitting the question of vexatious delay to the jury. We find no other error upon the trial.

10—However, if the plaintiff will, within fifteen days, file a *remittitur* of $197, the aggregate amount of the penalty imposed and the attorney's fees assessed, this cause will be affirmed. Otherwise, the judgment will be reversed, and the cause remanded for new trial. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed upon the conditions stated in the opinion. Otherwise, the judgment is reversed, and the cause remanded for new trial. All concur, *Trimble, J.,* in separate opinion.

Separate Opinion by TRIMBLE, J., on the Question of Approval of the Main Opinion.

TRIMBLE, J.—In considering the opinion in this case I have had considerable hesitancy in approving that part of the opinion holding, as I view it, that all findings on vexatious delay should be disallowed because there was "*no* evidence" of vexatious delay, whereas there was evidence that the proofs of death were taken and submitted to the company by the local agent, which he had obtained by having plaintiff to sign them in blank, and which he afterward filled out himself wherein he stated things that the company relied upon in denial of liability. It is my view that since the blank proofs of death were sent by the company to the local agent, with directions to secure them, and that he purported to obtain them from plaintiff, and then sent them to the company, the company was in law affected by any knowledge of the local agent as to any fraud in obtaining such proofs. And hence the evidence hereinabove referred to could not be regarded as "no evidence" of vexatious delay. My view was (and is yet) that *under the circumstances* the local agent in obtaining these proofs was the company's agent, acting within the scope of his authority, and his knowledge *in that situation* was company knowledge.

If I understand the opinion in State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, l. c. 619-21, it is not applicable here. In that case, there was no showing of fraud on the part of the agent, nor did it clearly appear that he was acting in the scope of his authority; and in addition to this, his alleged notice was of conditions existing prior to the time of that which was done, which was claimed to give the company knowledge. In the case at bar, however, the blank proofs of death were sent to the agent with directions to obtain the proofs and return to the company. He did so, but according to plaintiff's evidence (which to my mind made the question of

754

vexatious delay, on *that* evidence, one for the jury) he perpetrated a fraud on her; and in this situation his acts and knowledge were those of the company; and if the jury found this were true, it would be sufficient evidence to justify a verdict of vexatious delay *unless* there were other matters in the case which, of themselves, made the question of liability doubtful and one which the defendant had the right to have litigated. For the reason that such seems to be the situation in the case at bar, I concur in approving the disposal of the case made by the opinion.