ALICE SCOTT, (Plaintiff) Respondent, v. MISSOURI INSURANCE COM-
   PANY, a Corporation, (Defendant) Appellant, No. 41742—233
   S. W. (2d) 660.

Court en Banc, October 9, 1950.

Rehearing Denied, November 13, 1950.

52

*Jones, Hocker, Gladney & Grand* and *James C. Jones III* for appellant.

*Henry D. Espy* for respondent.

54

[661] DALTON, J.—This cause was heard and determined in the St. Louis Court of Appeals (222 S.W. (2d) 549) but, upon the order of this court, the cause was transferred here and it will be decided as though the appeal had properly come to this court in the first instance. Sec. 10, Art. V. Const. of Mo. 1945.

The facts are fully stated in the opinion of the Court of Appeals to which reference is had for a detailed statement. Briefly, the facts are that this is a suit on an industrial twenty-five year endowment insurance policy issued July 21, 1947, on the life of Gertrude Watts for $500, and in which the plaintiff, Alice Scott, is named as beneficiary. The insured died on December 7, 1947. The defense was based on a good health provision of the policy and alleged misrepresentations wilfully made in the application therefor and upon a release executed by the beneficiary after the death of the insured. The policy provided that it should not take effect if the insured die before the date thereof, or if on such date the insured be not in good health, but in either event the premiums paid thereon, if any, should be returned.

The issuance of the policy sued upon and the death of the insured on December 7, 1947, were admitted. Plaintiff-beneficiary offered the policy in evidence and evidence tending to show that she reported the insured's death to defendant's office and signed papers showing such death; that [662] at first she was told she would receive $500, the face amount of the policy; that she was subsequently told she could only get the amount paid in, $12.76, which sum was paid to her; that she signed the release pleaded by defendant; that the

defendant's supervisor wrote out the release and told her to sign it; that she did so, but that she didn't read it. Plaintiff's evidence further tended to show (by lay witnesses) that the insured was in good health when the policy was issued; that she worked every day up to the day of her death; that she was able to do hard work; that, on November 25, 1947, the automobile in which she was riding collided with another automobile; that, prior to this automobile accident she was in good health, but, thereafter, she complained of "headache and sickness"; and that she took sick about 3 p.m., on December 7, and was sick about five hours before she died. Plaintiff's evidence did not show the nature of the illness from which the insured died.

Defendant offered a copy of insured's application for the policy, a copy of the release pleaded and relied upon by the insurer, a certified copy of the record of the Bureau of Vital Statistics showing that the immediate cause of insured's death was "chronic myocarditis, chronic aortitis," the insurer's premium book for insured's policy showing the payment of $11.76 in premiums, the hospital records from the Homer G. Phillips Hospital concerning insured's last illness and the testimony of certain medical experts, which tended to show that the insured had suffered from heart trouble over a long period of time prior to the making of the application for this policy of insurance; and that she had been advised of such fact.

The insured's application for insurance states that she had never had heart disease, that she had had no medical or surgical attention in the last five years, and further contained the following clause: "I hereby apply for the above mentioned Policy with the Missouri Insurance Company, St. Louis, Missouri, and declare that the statements recorded above and on the reverse side hereof are true and complete and I agree that any misrepresentation wilfully made shall render the Policy void and that the Policy shall not be binding upon the Company unless upon its date I shall be alive and in sound health."

Defendant's evidence further showed a denial of all liability under the policy, except for the return of the premiums received, and that at the time the release was signed, only the return of premiums was mentioned to plaintiff, although defendant's evidence at the trial tended to show that the amount actually paid and receipted for in the release was $1.00 in excess of the amount of the premiums paid in on the policy. There was no evidence of any discussion of settlement or compromise prior to the execution of the release, but only a denial of liability, the assignment of ground thereof and an offer to return the amount of premiums. The evidence tended to show that an amount referred to as premiums paid was tendered to and accepted by plaintiff and the release signed.

There was also evidence that, prior to defendant's denial of liability and the refund of premiums, the defendant had made an investigation to determine whether or not defendant was liable; that on the basis of such investigation defendant determined that it was only liable for the refund of the premiums as the disability preceded the date of the policy; and that the manager of defendant's Industrial Claim Department so advised the plaintiff. For the alleged purpose of showing what facts were then avaiable to defendant and that a bona fide dispute existed as to liability when the claim was denied and the release executed, the defendant further offered a report of the Retail Credit Company showing the results of an investigation made for defendant, but the tendered exhibit was excluded as hearsay.

The jury returned a verdict for plaintiff for a total of $499.44, including interest, upon which judgment was entered and defendant appealed to the St. Louis Court of Appeals. That court reached the conclusion that the cause should be reversed and remanded for a new trial on account [663] of error in the giving of plaintiff's instructions 1 and 2, but overruled other assignments.

Appellant sought a rehearing in that court and a transfer to this court on the ground that the opinion erroneously approved the trial court's exclusion of the mentioned evidence as hearsay and, further, failed to give effect to the condition of the policy that it should not take effect unless upon the date it was issued the insured was in good health.

In the briefs filed in the Court of Appeals and transferred to this court, the appellant assigns error on the trial court's action (1) in overruling defendant's motion for a directed verdict; (2) on the exclusion of the Retail Credit Company's report of its investigation made at defendant's direction; and (3) in giving Instructions 1 and 2 requested by the plaintiff.

Defendant's motion for a directed verdict at the close of all the evidence was based upon two propositions (1) that the evidence as a matter of law shows a valid compromise and settlement of plaintiff's claim; and (2) that the evidence shows as a matter of law that the insured was not in good health on the date the policy in suit was issued, but was on that date suffering from heart disease from which she died.

The validity of the alleged compromise and settlement was for the jury. On defendant's own evidence, defendant's agent at the time the release was signed represented to plaintiff that the $12.76 paid to her was a refund of premiums paid on the policy and that the payment being made was due. Liability was admitted in any event to that extent. Neither the terms of the release, nor the conversations testified to by defendant's witnesses purported to show any payment in excess of an admitted liability, nor that the $12.76 was in compromise and settlement of a disputed claim for which settlement de-

fendant was paying any sum in excess of an admitted liability. Defendant also offered evidence tending to show that the amount paid was actually $1.00 in excess of the premiums paid, but on its own evidence it was not so referred to at the time the release was executed. There was no evidence that plaintiff knew the amount paid to her and receipted for in the release was in excess of the premiums paid, if in fact it was in excess thereof. Accordingly, whether the amount paid exceeded an admitted liability was a fact for the determination of the jury.

If defendant paid no more than its admitted liability, there was no consideration for the alleged compromise and settlement of plaintiff's claim for a further amount. The payment of an admitted debt is an insufficient consideration for the release of such a claim. Fowler v. Missouri Mutual Ass'n. (Mo. App.), 86 S.W. (2d) 946, 954; Watkins v. Prudential Ins. Co., 236 Mo. App. 118, 151 S.W. (2d) 462, 465; Green v. Baum (Mo. App.), 132 S.W. (2d) 665, 667; 45 Am. Jur. 680, Release, Sec. 13, 12 Am. Jur. 582, Contracts, Sec. 88.

For the new or substituted agreement to be itself sufficient consideration for the release of the obligation imposed under the original contract, it is the usual rule that the substituted agreement must work a change in the obligations of both parties, and not merely in the obligation of one alone. Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S.W. 67; 74; State ex rel. Presnell v. Cox (Mo. Sup.), 250 S.W. 374, 376; Vrooman v. Burdett, 336 Mo. 1181, 83 S.W. (2d) 95, 96.

Further the evidence fails to establish as a matter of law that the release in question was a compromise and settlement of a disputed claim so as to bar a further recovery. The release on its face does not purport to be a compromise and settlement of a disputed claim on which defendant was making a payment in excess of an admitted liability. The manager of defendant's industrial claim department testified on behalf of a defendant that when plaintiff presented her claim he "told her that under the terms of the policy contract the company was only liable for the refund of the premiums, because the disability preceded the date of the policy"; and that he "made a refund of the premiums."

The witness further testified: [664] "Now, you told her you could only return her the premiums? A. I told her that is all she was entitled to. Q. And all you would do was return the premiums? A. That's what I did do. Q. You returned the premiums? A. Yes. Q. You prepared some kind of a paper for her to sign? A. That was the release she signed. Q. You gave her that and had her to sign it? A. Yes, sir." Later, the witness testified that in fact the premiums were $11.76 and that he paid her $12.76, but he did not say he advised plaintiff of such fact.

58

Nor does the record establish as a matter of law that, at the time the release was executed, the defendant had made a reasonable investigation and had ascertained facts or evidence which would cause a reasonable person in good faith to believe that insured died of a heart disease of which she was suffering when the policy was issued, or to have caused defendant to have an honest belief that the insured had heart disease at the time the policy was issued and that such disease caused or contributed to her death. If payment was made for the release in a sum in excess of defendant's admitted liability, but of only a part of plaintiff's liquidated claim, then the matter of consideration turns upon the sufficiency of the facts and evidence in defendant's possession at that time to cause a reasonable person in good faith to believe that a valid defense existed to plaintiff's claim. Foster v. Aetna Life Ins. Co. of Hartford, Conn., 352 Mo. 166, 176 S.W. (2d) 482, 485. Whether any investigation was made and whether defendant had the results of such investigation in its possession and acted thereon at the time it denied all liability on the policy in excess of the premiums paid rests solely upon the credibility, weight and value of the oral testimony of defendant's witness Suter. The weight and value of his testimony was for the jury. Whether the facts stated in the excluded report, if admittedly at hand and acted upon, were sufficient to show a genuine good faith dispute as to liability when the release was executed is not for determination on this record.

Further, the evidence did not show as a matter of law that the insured was not in good health at the date of the issuance of the policy or that she then suffered from heart trouble which caused or contributed to her death. Plaintiff offered no evidence showing or tending to show such facts, but made a prima facie showing of good health. Defendant, on the other hand, offered a copy of the death certificate, a copy of the hospital records and the oral testimony of Drs. Wilkerson and Glaser, as reviewed in the opinion of the St. Louis Court of Appeals. Plaintiff was not concluded by these exhibits, nor by the oral testimony of these witnesses tending to show the condition of insured's health on July 21, 1947, when the policy was issued. Streeter v. Washington Fidelity National Ins. Co., 229 Mo. App. 33, 68 S. W. (2d) 889, 893. Nor does the defendant rely upon evidence which plaintiff admits to be true. See Dyer v. Kansas City Life Ins. Co. (Mo. App.), 188 S.W. (2d) 758. On cross-examination, Dr. Wilkerson testified that he had not treated the insured within a year before her death and did not know what her condition was on July 21, 1947 and Dr. Glaser testified, as follows: ''Q. Of your own knowledge you didn't know what her condition was in July of 1947? A. No, sir.'' On the record presented the issue of good health at the date of the issuance of the policy was for the jury. Rush v. Metropolitan Life Ins. Co. (Mo. App.), 63 S.W. (2d) 453,

455; Otto v. Metropolitan Life Ins. Co., 228 Mo. App. 742, 72 S.W. (2d) 811, 815.

■ Did the trial court err in excluding defendant's exhibit 6; being the transcript of facts and evidence collected by the Retail Credit Company at the direction of defendant and showing the results of their investigation of facts pertinent to the issue of defendant's liability on the policy in question? The only objection made to this exhibit was that it was hearsay. The report contained detailed information concerning the death certificate, the records of the Homer G. Phillips hospital, mentioned [665] supra, interviews with Drs. Clark, Wilkerson and Schucatt, a signed statement obtained from plaintiff and other information.

There are many exceptions to the hearsay rule. Whether or not defendant acted in good faith and on reasonable grounds and evidence in denying liability was a matter that could only be shown by proof of the evidence upon which it acted, towit, the report in question. The report, though hearsay, was relevant and admissible on the issue of whether there was consideration for the release, that is, whether or not there was a genuine good faith dispute as to liability and whether the facts and evidence in defendant's possession would have caused a reasonable person in good faith to believe that there was no liability to plaintiff on the policy. Looff v. Kansas Rys. Co. (Mo. Sup.), 246 S.W. 578, 580; O'Leary v. Scullin Steel Co., 303 Mo. 363, 382, 260 S.W. 55, 61; Foster v. Aetna Life Ins. Co. of Hartford, Conn., supra; Henry v. First National Bank of Kansas City, 232 Mo. App. 1071, 115 S.W. (2d) 121, 133; 31 C.J.S. 1009, Sec. 257.

While the report was not competent for the purpose of proving the truth of the statements set out therein, the report itself and defendant's knowledge of its content formed a necessary link in a chain of circumsantial evidence tending to show that defendant had made a reasonable investigation and had ascertained facts which would cause a reasonable person in good faith to believe that the insured had heart trouble when the policy was issued; that such heart trouble caused or contributed to her death; and that defendant was not liable to plaintiff. The trial court erred in excluding the exhibit. "* * * where evidence is admissible for one purpose or one issue but would be improper for other purposes and upon other issues in the case, it should be received. The opponent then has a right to an instruction if he should request it limiting the extent to which and the purpose for which the jury may consider such evidence." State ex rel. Kansas City Public Service Co. v. Shain, 345 Mo. 543, 134 S.W. (2d) 58, 61.

■ Appellant further contends that "the Court erred in giving Instruction No. 1 on behalf of plaintiff for the reason that said instruction directed a verdict for the plaintiff without requiring a finding which was essential to plaintiff's recovery, towit, that there

was no consideration for the release executed by the plaintiff." Appellant relies on Foster v. Aetna Life Ins. Co., supra, 176 S.W. (2d) 482, 488 and Macklin v. Fogel Const. Co., 326 Mo. 38, 31 S.W. (2d) 14, 19. Respondent contends that, as a matter of law, there was no consideration for the release as only an admitted liability, the return of premiums and interest, was paid for the release; that the instruction properly submitted issues of fact and "not any questions of law"; and that when read with other instructions to which it referred, as follows, "unless you find for the defendant under other instructions," the instruction properly "told the jury what facts were necessary to find in order to return a verdict for respondent." Respondent further contends that in this case the testimony shows that "the appellant fraudulently secured the release by representing that 'it was a young policy, that deceased had not been in the company long enough and all they could pay was a return of the premiums and interest.'" Whether or not any amount in excess of a debt admittedly due to plaintiff was paid for the release was an issue of fact for the jury. Fraud was not pleaded nor submitted. Instruction No. 1 purports to cover the entire case and directs a verdict for plaintiff without any reference to the release (admittedly executed) and without requiring the finding of any facts establishing the invalidity of the release. No other instruction given in the case properly submitted or required, as a condition to a verdict for plaintiff, a finding of facts from which it would appear that there was no consideration for the giving of the release. Since no finding of facts showing the absence of consideration for the release was required as a condition precedent to a finding for the plaintiff, the instruction was prejudicially erroneous. Macklin v. Fogel Construction Co., supra; Foster v. Aetna Life Ins. Co., supra.

[666] Appellant further contends that the court erred in giving Instruction No. 2 on behalf of plaintiff for the reason that the instruction incorrectly states the law of waiver; and that under the law and evidence in this case plaintiff was bound by the answers of the insured in the application for the policy in suit. Instruction No. 2 purported to submit an issue of waiver by the defendant of the "untruthfulness of said answers, if any," in the application of insured for the policy, but without submitting and requiring a finding, as a basis for a finding of waiver, that the soliciting agent had knowledge that the answers given in the application were false. The instruction was therefore, erroneous. Brummer v. National Life & Accident Ins. Co. (Mo. App.), 59 S.W. (2d) 781, 786; Guenther v. Metropolitan Life Ins. Co. (Mo. App.), 189 S.W. (2d) 126, 128; Kirk v. Metropolitan Life Ins. Co. 336 Mo. 765, 81 S.W. (2d) 333, 339 (3). It is difficult to understand respondent's position on this point in view of her evidence that insured was in fact in good health and the answers in her application correct. Respondent insists that the

issue of waiver was properly presented by Instruction No. 2. She says "the alleged waiver was attached to the application, and if insured did not know she was waiving a valid right, she was not bound by the terms thereof. * * * The insured was not bound by statements she had no knowledge of. * * * Furthermore, the jury found against defendant on the question of whether or not insured knew the application contained the alleged waiver." The cases cited by respondent, towit, Yancey v. Central Mut. Ins. Ass'n. (Mo. App.), 77 S.W. (2d) 149, 157; Longo v. John Hancock Mut. Life Ins. Co. (Mo. App.), 142 S.W. (2d) 871, 873; Kettlegardes v. Prudential Ins. Co. of America (Mo. App.), 175 S.W. (2d) 917, 919; and Coleman v. Central Mut. Ins. Ass'n. (Mo. App.), 52 S.W. (2d) 22, 23; support appellant's position that a waiver of untruthful answers can be effected only if there is evidence that defendant's agent has knowledge of the untruthfulness of the answers in the application. In this case there was no evidence to support a proper instruction on waiver. We find no evidence in the record tending to show that defendant's agent had knowledge that the insured, at the time she executed the application, was not in good health or that she had been treated by a doctor within five years previous to the application. The court erred in giving the Instruction No. 2.

On account of the errors noted in the exclusion of the mentioned exhibit and the giving of Instructions No. 1 and No. 2, the judgment should be reversed and the cause remanded for a new trial. It is so ordered. All concur.