**Lula Mae SCOTT, Appellant,**

v.

**TWIN CITY STATE BANK, Respondent.**

**No. KCD 27035.**

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Motion for Rehearing and/or Transfer Denied June 1, 1976.

Application to Transfer Denied July 12, 1976.

Raymond Peltzman, Kansas City, for appellant.

H. Michael Coburn, Kansas City, for respondent; Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, of counsel.

Before DIXON, P. J., PRITCHARD, C. J. and WASSERSTROM, J.

PRITCHARD, Chief Judge.

Appellant's three count petition sounds in conversion of a repossessed automobile and amounts due as refund premium on a cancelled automobile physical damage policy. She asked for a total of $1,845.60 actual and $10,500.00 punitive damages.

Respondent's motion for summary judgment set forth that there was no genuine issue as to any material fact relevant to appellant's claims under her petition be-

cause of unanswered requests for admissions which are deemed admitted under Rule 59.01(a). The summary judgment was sustained by the court. Certainly, if the unanswered requests for admissions dispose of all issues raised by the pleadings, the summary judgment was proper and appellant's claims to relief are foreclosed. *Manpower, Inc. v. Area Development Corporation*, 440 S.W.2d 515, 518[5] (Mo.App.1969); *Metropolitan St. Louis Sewer Dist. v. Zykan*, 495 S.W.2d 643, 656[16] (Mo.1973).

■ Appellant's Count I alleges that about June 9, 1971, she purchased from Miller Pontiac Company a 1966 Pontiac for $1,495.00, paying $375.00 down, leaving $1,120.00 principal to which $103.00 was added for physical damage insurance, and $202.24 finance charge. One installment payment of $75.00 was due June 25, 1971, leaving 24 monthly installments of $56.26 each. Respondent obtained a physical damage policy but on July 1, 1971, it was cancelled and $95.00 of the premium was refunded to respondent. Appellant further alleged that she demanded the $95.00 refund of respondent so she could obtain the policy, and respondent refused to comply with the demand, but appellant is foreclosed on that allegation because she is deemed to have admitted to the contrary. It is, however, further alleged that about September 16, 1971, respondent notified appellant that it was purchasing insurance coverage on the car for one year; that appellant relied upon that statement and believed that respondent had obtained insurance but it failed to do so; and "on or about the 21st day of January, 1972, without any prior notice to plaintiff, defendant repossessed said automobile from the possession of the plaintiff because it claimed that there was no insurance coverage on said motor vehicle, and defendant demanded payment from plaintiff in full of the entire balance then due upon said contract; that on February 4, 1972, defendant notified plaintiff that it had credited $45.60 of the aforesaid insurance refund toward the repossession charges which it claimed had accrued, and that it was applying the remaining $49.40 on the principal balance of the loan; that

on February 7, 1972, after plaintiff had obtained a policy of insurance upon said automobile effective January 25, 1972, to April 25, 1972, defendant returned possession of said automobile to the plaintiff." These allegations were expressly admitted in respondent's answer.

Respondent's letter of September 16, 1971, in evidence by way of the requests for admissions, advised appellant that it was "raising your installment loan payments to $75 for the next nine months. We are purchasing automobile collision and comprehensive insurance at a cost of $255 for one year. Please change your records to indicate that the next payment due on September 25th should be in the amount of $75. You still have the option of getting your insurance somewhere else and I am sure that you could get it cheaper if you tried; however, we cannot let this car go uninsured."

The Instalment Sale Contract, which quite apparently was assigned to respondent, included the $103.00 premium, and the phrase "Buyer may choose the person through which this insurance is to be obtained." Further, it provided: "3(a) In the event either (1) that the obligation payable hereunder includes a charge for the required physical damage insurance, to be procured either by seller or by buyer, for a period less than the full term of this contract, or (2) that said obligation does not include a charge for required physical damage insurance, buyer shall furnish satisfactory evidence that said property continues to be effectively and adequately covered by such insurance at all times during the term of this contract. Upon failure of the buyer to do so for any reason, seller may, but without prejudice to seller's rights under this contract if it does not, endeavor to procure such insurance, and in the event that seller does procure same, buyer agrees to pay, as an additional part of the obligation secured hereunder, a charge equal to the amount of the premium for such insurance, together with interest thereon at the highest lawful contract rate, in equal instalments concurrently with the instalments of

the unpaid balance then remaining payable hereunder."

What has happened here is that the respondent received the $95.00 refund of insurance premium which belonged to appellant. She was, however, according to the contract, under the primary obligation to provide physical damage insurance which she did not herself do after the cancellation. Respondent affirmatively undertook to procure the insurance as per its advice to appellant in the letter of September 17, 1971, still holding the $95.00 in its possession. Again, in accordance with its right under the contract, respondent advised appellant by that letter that her installment payments were increased to $75.00 per month to take care of the premium on the insurance. September 25, 1971, was appellant's next installment date. She paid it on October 7, 1971, and subsequent payments were made on November 8, 1971; December 8, 1971; January 12, 1972, and January 31, 1972, all presumably in the original amount of $56.26 each. Subsequent to the September 16, 1971 letter of respondent, there were five installments due. The difference between the increased monthly installment, for insurance premium, of $75.00 and $56.26 is $18.74. For the five installments, this increase would amount to $93.70, which is less than the $95.00 refund which respondent had on hand and which could have been used for insurance purposes by it as below held.

■ It is true that, as the admissions show, she did not respond to respondent's inquiries as to what disposition she wanted of the $95.00. In that situation the familiar and analogous rule applies that where the debtor, having the opportunity to do so, fails to make a designation of where his funds in the hands of the creditor should be applied, the creditor may do so. 70 C.J.S. Payment § 57, p. 262; *Neal v. Gideon*, 157 Kan. 1, 138 P.2d 419, 420[3, 4] (1943); *Edelblute v. Waddell & Reed, Inc.*, 171 Kan. 508, 233 P.2d 757, 761[6, 7] (1951); and *Carry v. Homer*, 195 Kan. 475, 407 P.2d 538, 542[1] (1965), et seq., and cases and authority cited. For Missouri cases holding similarly, see *Herrman v. Daffin*, 302 S.W.2d 313 (Mo. App.1957); *Madison v. Dodson*, 412 S.W.2d 552 (Mo.App.1967). And, where as here, the debtor having had the opportunity to designate application of payment and both he and the creditor fail to do so, the "law will make the application as right and justice requires . . . ." *Title Insurance Corp. of St. Louis v. United States*, 432 S.W.2d 787, 791[6] (Mo.App.1968); *Herrman*, supra; and *Neal v. Gideon*, supra, 138 P.2d 419, 420[3, 4] (1943). In this case, justice requires that this court hold that the $95.00 in respondent's hands, which it did not credit after notice to appellant, be in equal installments of $18.74 each applied to the contractual additional amount of insurance coverage for five months, which would extend beyond the date of January 21, 1972, when respondent repossessed the automobile. By this application of the funds in respondent's hands, there was no legal basis for it to replevin the automobile upon the sole ground, as admitted, that there was no insurance coverage on the vehicle. Respondent will not be heard to say, in view of its September 16, 1971, letter, that it was not obliged to procure physical damage insurance on the automobile, in accordance with the right it had under the contract. It follows that as a matter of law, the replevin and repossession of the vehicle was wrongful, and a genuine issue of fact remains as to appellant's damages under Count I.

■ The automobile was returned to appellant on February 7, 1972, after she had procured an insurance policy of her own. At that time she signed a purported release of respondent's liability incident to the repossession. Since the replevin was wrongful, appellant was entitled to the possession of her automobile, and nothing new flowed from respondent to her. The release is without consideration and is not a bar to appellant's action. *Green v. Baum*, 132 S.W.2d 665, 667 (Mo.App.1939); *Scott v. Missouri Ins. Co.*, 361 Mo. 51, 233 S.W.2d 660, 663 (banc 1950).

■ In Count II of her petition, appellant alleges that the $45.60 of her $95.00 insurance refund was wrongfully converted to

respondent's use in applying the $45.60 to its costs in the repossession of the automobile. Respondent in answer admits that application of funds. As noted above, the replevin and repossession was wrongful, and respondent was therefore not authorized to incur any such costs at appellant's expense. The $45.60 was diverted from its proper application to the payment of insurance premiums under the installment contract, as above held. As a matter of law there was a wrongful conversion of the insurance premiums, and there remains the issue of appellant's damages for that act (as prayed $45.60 actual and $500.00 punitive damages).

 Appellant's Count III is to the effect that respondent, on a *second* replevin and repossession of her automobile, March 17, 1972, accepted her late monthly payments after July 29, 1971, without repossession and thus lulled her into a false sense of security that it would accept late payments and refrain from repossession. The admissions show that appellant did, prior to the first repossession in January, make late payments and respondent accepted them. Undoubtedly, as a basis for repossession at that time, respondent could be held to be have waived the requirement of the contract for payments on time; and note that the basis for repossession in January was the failure to have insurance coverage solely.

As to the March repossession, the admissions show that after appellant was restored to possession of the vehicle on February 7, 1972, respondent on or about February 7, 1972, warned appellant that all future payments must be made on the due date, or the automobile would be repossessed. Appellant mailed a money order to respondent on March 19, 1972, two days after repossession, which was for the delinquent February 29, 1972, installment. The same was 19 days late, and the money order was returned to appellant. As to this repossession there was certainly no course of conduct, i. e., several acceptances of late payments, which would lull appellant into a false sense of security that no repossession

would take place. No genuine issue of fact appears with respect to that issue and summary judgment was proper as to Count III. The facts are inapposite to *Edwards v. Smith*, 322 S.W.2d 770 (Mo.1959), where there was a constant default in installments over two years lending support to the alleged agreement not to declare the whole amount of the note due without first giving notice that payments would be required to be made in accordance with the terms of the note and giving reasonable opportunity to make delinquent payments. Here, as admitted, notice was given, and thereby appellant was given the opportunity to make the February 29, 1972, payment on time.

The judgment upon Count III is affirmed. The judgments on Counts I and II are reversed, and as to them, the case is remanded for trial on the issue of damages only.

All concur.